**No. 26-4686**

# United States Court of Appeals for the Ninth Circuit

APPALACHIAN INSURANCE COMPANY,

*Appellant*,

v.

THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, *et al.*,

*Appellees.*

Appeal from the United States District Court
for the Northern District of California (No. 3:25-cv-08563-RFL (lead))

## APPELLANT APPALACHIAN INSURANCE COMPANY'S OPENING BRIEF

Harris B. Winsberg
Matthew G. Roberts
Brian C. Aton
**PARKER, HUDSON, RAINER & DOBBS LLP**
303 Peachtree St. NE
Suite 3600
Atlanta, Georgia 30308
(404) 523-5300

Todd C. Jacobs
John E. Bucheit
**PARKER, HUDSON, RAINER & DOBBS LLP**
171 N. Aberdeen Street
Suite 400
Chicago, Illinois 60607
(312) 447-3306

Christina M. Lincoln
**ROBINS KAPLAN LLP**
2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
(310) 552-0130

Melissa M. D'Alelio
Taylore E. Karpa Schollard
**ROBINS KAPLAN LLP**
800 Boylston Street
Suite 2500
Boston, Massachusetts 02199
(617) 267-2300

*Counsel for Appalachian Insurance Company*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1
JURISDICTIONAL STATEMENT ........ 4
ISSUES PRESENTED ........ 5
STATEMENT OF THE CASE ........ 8
A. The Parties ........ 8
B. The Chapter 11 Filing ........ 9
C. The Adversary Proceeding ........ 11
D. The Stipulation ........ 15
E. The Motion & Response ........ 16
F. The Order ........ 23
G. The District Court Order ........ 24
H. This Appeal ........ 31
STANDARD OF REVIEW ........ 31
SUMMARY OF ARGUMENT ........ 32
ARGUMENT ........ 38
I. THE BANKRUPTCY COURT DID NOT ENGAGE IN THE CORRECT LEGAL INQUIRY ........ 38
A. The Bankruptcy Court Did Not Apply §362 ........ 39
B. The Bankruptcy Court's Analysis Was Fundamentally Flawed ........ 45
1. There Was No "Cause" for Stay Relief ........ 45
2. The Stipulation Is Not Fair and Equitable ........ 55
II. THE BANKRUPTCY COURT CLEARLY ERRED ........ 65
III. THE RESULT BELOW CONTRAVENES PUBLIC POLICY ........ 67
CONCLUSION ........ 72

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A & C Props.*,
784 F.2d 1377 (9th Cir. 1986) ....................17, 18, 32, 36, 39, 56, 57, 64

*In re Aleris Int'l, Inc.*,
456 B.R. 35 (Bankr. D. Del. 2011) .................... 40

*In re Arden*,
176 F.3d 1226 (9th Cir. 1999) .................... 56

*Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*,
289 F.3d 589 (9th Cir. 2002) .................... 65

*Bartenwerfer v. Buckley*,
598 U.S. 69 (2023) .................... 67

*Bateman v. U.S. Postal Serv.*,
231 F.3d 1220 (9th Cir. 2000) .................... 43, 44

*In re Berkeley Del. Court, LLC*,
834 F.3d 1036 (9th Cir. 2016) .................... 39

*In re Bialac*,
712 F.2d 426 (9th Cir. 1983) .................... 68

*In re Bogdanovich*,
292 F.3d 104 (2d Cir. 2002) .................... 40, 41, 46, 47

*Briggs v. Merck Sharp & Dohme*,
796 F.3d 1038 (9th Cir. 2015) .................... 48

*In re Brotman Med. Ctr., Inc.*,
BAP No. CC-08-1056-DKMo, 2008 WL 8444797 (B.A.P. 9th Cir. Aug. 15, 2008) .................... 41

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Carrillo-Gonzalez v. I.N.S.*,
353 F.3d 1077 (9th Cir. 2003) ............ 65

*In re Chevron U.S.A., Inc.*,
109 F.3d 1016 (5th Cir. 1997) ............ 48, 51

*In re Conejo Enters., Inc.*,
96 F.3d 346 (9th Cir. 1996) ............ 31, 34, 37, 40, 41, 69, 70

*In re Curtis*,
40 B.R. 795 (Bankr. D. Utah 1984)
............ 21, 35, 40, 42, 44, 46, 47, 50, 52

*Czyzewski v. Jevic Holding Corp.*,
580 U.S. 451 (2017) ............ 38, 70

*In re Drexel Burnham Lambert Grp. Inc.*,
995 F.2d 1138 (2d Cir. 1993) ............ 57, 60

*In re Energy Future Holdings Corp.*,
648 F. App'x 277 (3d Cir. 2016) ............ 70

*In re Hall, Bayoutree Assocs., Ltd.*,
939 F.2d 802 (9th Cir. 1991) ............ 44

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024) ............ 63, 68

*Interstate Fire & Cas. Co. v. Roman Catholic Bishop of Sacramento*,
Nos. 2:25-cv-02262-WBS & 2:25-cv-02288-WBS, 2026 WL 508073 (E.D. Cal. Feb. 24, 2026) ............ 26, 33

*In re Jim's Maint. & Sons Inc.*,
418 F. App'x 726 (10th Cir. 2011) ............ 46

*In re JTS Corp.*,
617 F.3d 1102 (9th Cir. 2010) ............ 31

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*In re Kim*,
71 B.R. 1011 (Bankr. C.D. Cal. 1987) .......... 46

*In re Kronemyer*,
405 B.R. 915 (B.A.P. 9th Cir. 2009) .......... 40

*In re Laguna Assocs. Ltd. P'ship*,
30 F.3d 734 (6th Cir. 1994) .......... 45

*In re Lahijani*,
325 B.R. 282 (B.A.P. 9th Cir. 2005) .......... 39

*Lemoge v. United States*,
587 F.3d 1188 (9th Cir. 2009) .......... 43

*In re Little Creek Dev. Co.*,
779 F.2d 1068 (5th Cir. 1986) .......... 45, 68

*In re Mac Donald*,
755 F.2d 715 (9th Cir. 1985) .......... 17, 40, 41, 45

*In re MatlinPatterson Glob. Opportunities Partners II L.P.*,
644 B.R. 418 (Bankr. S.D.N.Y. 2022) .......... 57

*In re Mazzeo*,
167 F.3d 139 (2d Cir. 1999) .......... 44, 46

*In re Miami Metals I, Inc.*,
603 B.R. 531 (Bankr. S.D.N.Y. 2019) .......... 57

*In re Mickey Thompson Entm't Grp., Inc.*,
292 B.R. 415 (B.A.P. 9th Cir. 2003) .......... 39

*Minn-Kota Farm Agency, Inc. v. Home Fed. Sav. & Loan Ass'n*,
No. 92-1825, 1992 WL 323066 (8th Cir. Nov. 11, 1992) .......... 46

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
587 U.S. 370 (2019) .......... 67

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**


*In re Plumberex Specialty Prods., Inc.*,
311 B.R. 551 (Bankr. C.D. Cal. 2004) .............................. 21, 40, 46, 47

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968) .............................21, 24, 36, 56, 57, 58, 59, 64, 65

*Red Lion Hotels Franchising, Inc. v. MAK, LLC*,
663 F.3d 1080 (9th Cir. 2011) ...................................................... 65, 67

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
589 U.S. 35 (2020) ............................................................................. 5

*In re Roman Catholic Archbishop of Baltimore*,
No. 23-16969-MMH, 2026 WL 1625109 (Bankr. D. Md. June 5, 2026) ............................................................................ 33, 48

*In re Roman Catholic Bishop of Oakland Bankr. Automatic Stay Appeal*,
680 B.R. 658 (N.D. Cal. 2026) ...................................................... 26, 34

*In re Schwartz-Tallard*,
803 F.3d 1095 (9th Cir. 2015) ............................................... 37, 68, 69

*In re SGL Carbon Corp.*,
200 F.3d 154 (3d Cir. 1999) ............................................................... 67

*Smith v. Mack Trucks, Inc.*,
505 F.2d 1248 (9th Cir. 1974) ............................................................ 65

*In re Sonnax Indus.*,
907 F.2d 1280 (2d Cir. 1990) .............................................................. 40

*Sternberg v. Johnston*,
595 F.3d 937 (9th Cir. 2010) ............................................................... 37

*In re The Diocese of Camden, N.J.*,
No. 20-21257-JNP (Bankr. D.N.J. July 8, 2025) ................................ 33

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**


*In re The Roman Catholic Bishop of San Diego*,
No. 24-02202-CL11 (Bankr. S.D. Cal. Aug. 14, 2025), Dkt. No. 851 .......... 33, 48, 50

*In re The Roman Catholic Bishop of Santa Rosa*,
No. 23-10113 (Bankr. N.D. Cal. Aug. 26, 2025), Dkt. No. 1480 .......... 34

*In re The Roman Catholic Diocese of Syracuse, N.Y.*,
No. 20-30663-WAK (Bankr. N.D.N.Y. Sep. 28, 2023) .......... 69

*In re Tucson Estates, Inc.*,
912 F.2d 1162 (9th Cir. 1990) .......... 40, 41, 42

*United States v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) .......... 32, 43, 44, 45, 52, 53, 55, 60, 61

*In re W.R. Grace & Co.*,
729 F.3d 311 (3d Cir. 2013) .......... 71

*Wright v. Fireman's Fund Ins. Cos.*,
11 Cal.App.4th 998 (1992) .......... 62, 63

**Statutes**

11 U.S.C. §105(a) .......... 15, 16, 17

11 U.S.C. §362 .......... 7, 12, 17, 33, 34, 35, 38, 39, 40, 42, 43, 44, 45, 46, 48

11 U.S.C. §363 .......... 39

11 U.S.C. §1123(a)(4) .......... 20, 28, 29, 70

28 U.S.C. §157(b) .......... 4

28 U.S.C. §158 .......... 5

28 U.S.C. §1291 .......... 5

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

28 U.S.C. §1334 .......... 4

Cal. Civ. Proc. Code §340.1 (2020) .......... 9

Cal. Ins. Code §11580(b)(1) .......... 28, 63

**Other Authorities**

10A Collier on Bankruptcy ¶ 9019.01 (Richard Levin & Henry J. Sommer eds., 16th ed. 2026) .......... 55

N.D. Cal. General Order No. 24 .......... 4

Fed. R. Bankr. P. 4001 .......... 17

Fed. R. Bankr. P. 8002(a) .......... 5

Fed. R. Bankr. P. 9019 .......... 17, 39, 45, 55

Fed. R. Civ. P. 52(a) .......... 44

H.R. Rep. No. 95-595 (1977) .......... 41

*In re The Roman Catholic Archbishop of San Francisco*, No. 23-30564 (Bankr. N.D. Cal. Sep. 3, 2026), Dkt. No. 1933 .......... 30

Steven Shavell, *Foundations of Economic Analysis of Law* (2004) .......... 53, 54

## PRELIMINARY STATEMENT

Bankruptcy is about creating a level playing field. This appeal is the product of that principle gone terribly wrong. At issue is the automatic stay – or, more precisely, a collusive bargain to extend the stay selectively – and whether a debtor upon entering Chapter 11 receives not only a "breathing spell" from its creditors, but also a chokehold over its adversaries.

The answer to that question is an unequivocal "no." In an unbroken line of precedent going back decades, this Court has hewed to the same understanding of the automatic stay: it provides a respite from creditor action, preserves the status quo, and prevents a destructive race to the courthouse. The stay is not a weapon, and Congress in creating the stay did not make it available for mercenary deployment by debtors striving to achieve preferred outcomes in negotiations or litigation.

Yet that is precisely how the stay was employed here. The debtor below (and an appellee here) entered into a stipulated stay extension and relief agreement explicitly designed to manufacture increased risk for its liability insurers, including among others appellant Appalachian. Under the terms of this arrangement, the Debtor and some of its affiliates (all

non-debtors), various plaintiffs with pending tort claims against those parties, and the committee appointed to represent such claimants' interests collectively agreed to settle certain related litigation by extending the benefits of the automatic stay to the Non-Debtor Affiliates – except in two respects. Five plaintiffs, selected without any outside input, would be authorized to litigate to conclusion their tort claims; and the as-extended stay would protect from any resulting judgment only the ***non***-insurance assets of the Non-Debtor Affiliates (and the Debtor), leaving the applicable insurance policies exposed.

This arrangement should never have been approved. Immunizing from judgment risk all non-insurance assets of an insured (particularly a non-debtor insured) is wholly at odds with the purpose of the automatic stay, serves no legitimate bankruptcy function, and creates a clear and perverse moral hazard. Not to mention, the Debtor failed to articulate or support with legitimate evidence any recognized "cause" for stay relief and further failed to show that the Stipulation (as a settlement) was "fair and equitable" within the meaning of hornbook law.

Yet the Bankruptcy Court below waved the Debtor's motion through without a hearing – despite opposition from Appalachian and

others – and approved the Stipulation without articulating any reasoning beyond a brief docket text order that shed precious little light. The District Court on appeal then shrugged off these and other defects, focusing more on backfilling than scrutinizing the many holes in the Bankruptcy Court's order.

This appeal also presents a question of recurring importance that this Court has not addressed. Bankruptcy courts in several diocesan cases have approved materially similar stay-relief stipulations, and district courts have affirmed in reliance on one another – the District Court here deeming two such decisions "highly persuasive." [1-ApplchER-7.] None of these decisions, including the District Court's decision below, grapples with the core defect presented here: an order that lifts the stay to allow judgments to be entered and enforced against the insured's policies while immunizing every other asset of the insureds, including the assets of non-debtors, on a record devoid of information about the cases being released. Guidance from this Court is needed.

Any one of these omissions, standing alone, provides sufficient grounds to reverse; together, they compel that result. Appalachian therefore respectfully requests entry of an order (a) reversing the District

Court's order and remanding for further proceedings, or (b) in the alternative, vacating and remanding with instructions for the Bankruptcy Court to select, with Appalachian's input, representative cases to release from the automatic stay – thereby blunting the more pernicious effects of the Bankruptcy Court's errors while sparing the parties the time and expense of the additional proceedings that reversal would require.

## JURISDICTIONAL STATEMENT

The United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court") had jurisdiction to consider the *Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay* [3-ApplchER-409–418] (the "Motion") pursuant to 28 U.S.C. §§157(b) and 1334 and N.D. Cal. General Order No. 24.

The Bankruptcy Court on September 2, 2025 granted the Motion by docket text order [1-ApplchER-52–62] (the "Docket Text Order") and later entered a form *Order Granting Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay* (Sep. 17, 2025) [1-ApplchER-15–51] (the "Written Order," together with the

Docket Text Order, the "Order"). The Order is final under *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37–38 (2020).

Appalachian on September 16, 2025 timely noticed an appeal of the Docket Text Order [6-ApplchER-1002–1010] and on October 1, 2025 timely noticed an appeal of the Written Order [6-ApplchER-957–1001]. *See* Fed. R. Bankr. P. 8002(a).

The District Court had jurisdiction to hear Appalachian's appeal of the Order pursuant to 28 U.S.C. §158(a)(1) and affirmed on June 22, 2026 [1-ApplchER-2–14] (the "DC Order"). Appalachian on July 21, 2026 timely noticed an appeal of the DC Order. [6-ApplchER-912–931.] This Court has jurisdiction over the appeal under 28 U.S.C. §§158(d)(1) and 1291.

## ISSUES PRESENTED

1. Whether the District Court erred in affirming the Bankruptcy Court's Order, which granted the Motion and approved the accompanying *Stipulation By and Among the Roman Catholic Archbishop of San Francisco, the Official Committee of Unsecured*

*Creditors, and the Survivor Defendants* [1-ApplchER-19–50] (the "Stipulation"[1]), including by:

a. Finding that the Bankruptcy Court adequately considered Appalachian's interests when granting the Motion and approving the Stipulation, and otherwise determining that the Stipulation satisfied the requirements for approval of a compromise in bankruptcy [3-ApplchER-232–261, 3-ApplchER-229–231 (objected to)]; [1-ApplchER-52–62, 1-ApplchER-15–51 (Bankruptcy Court ruling)]; [2-ApplchER-157–194, 2-ApplchER-64–90 (raised on appeal)]; [1-ApplchER-2–14 (ruled upon)];

b. Concluding that the five tort lawsuits released from the automatic stay pursuant to the Stipulation and Order did not need to be representative of the remaining body of tort claims, and otherwise determining that the Bankruptcy

[1] The Stipulation was first filed in the Adversary Proceeding (defined below) [4-ApplchER-453–480], then in the Bankruptcy Case as an exhibit to a proposed order granting the Motion [3-ApplchER-423–451], and thereafter was attached to the Written Order [1-ApplchER-19–50]. Citations to the Stipulation herein refer to the version attached to the Written Order.

Court did not abuse its discretion in finding "cause" to lift the automatic stay under 11 U.S.C. §362(d)(1) [3-ApplchER-232–261, 3-ApplchER-229–231 (objected to)]; [1-ApplchER-52–62, 1-ApplchER-15–51 (Bankruptcy Court ruling)]; [2-ApplchER-157–194, 2-ApplchER-64–90 (raised on appeal)]; [1-ApplchER-2–14 (ruled upon)];

c. Concluding that the Bankruptcy Court engaged in the correct legal analysis when granting the Motion and approving the Stipulation [2-ApplchER-157–194, 2-ApplchER-64–90 (raised on appeal)]; [1-ApplchER-2–14 (ruled upon)];

d. Determining that the Bankruptcy Court did not abuse its discretion by entering the Order on a deficient record [2-ApplchER-157–194, 2-ApplchER-64–90 (raised on appeal)]; [1-ApplchER-2–14 (ruled upon)]; and

e. Determining that the Bankruptcy Court did not clearly err by making the following unsupported and incorrect finding of fact: the Official Committee of Unsecured Creditors "did not unilaterally select the [released] cases." [2-ApplchER-

157–194, 2-ApplchER-64–90 (raised on appeal)]; [1-ApplchER-2–14 (ruled upon)].

The pertinent statutes and rules are included in the **Addendum**.

## STATEMENT OF THE CASE

### A. The Parties

Appalachian Insurance Company ("Appalachian") is the subsidiary of a commercial property insurance company. In that capacity, Appalachian prepetition allegedly entered into certain insurance contracts with or for the benefit of the Roman Catholic Archbishop of San Francisco (the "Debtor"). [4-ApplchER-685–686 (¶¶5–8), 4-ApplchER-689–690.]

The Debtor is a Roman Catholic Archdiocese that serves the faithful in the counties of San Francisco, San Mateo, and Marin, California. [5-ApplchER-884 (¶14).] Its primary function is to provide resources, support, and other services to the parishes, schools, missions, and other related entities (each, a "Non-Debtor Affiliate") located within this geographical territory. [5-ApplchER-885 (¶15).] The Non-Debtor Affiliates, in turn, carry out much of the Debtor's day-to-day ministry. *See generally* [5-ApplchER-885–893 (¶¶18–40)].

### B. The Chapter 11 Filing

In 2019, Governor Newsom signed Assembly Bill 218. Known as the California Child Victims Act, AB 218 amended Cal. Civ. Proc. Code §340.1 to revive for a three-year window previously time-barred civil claims arising out of childhood sexual abuse (each, an "Abuse Claim"). [5-ApplchER-897 (¶53).] The statutory window opened on January 1, 2020. [5-ApplchER-877 (¶¶7–8).]

As a result of AB 218, approximately 541 individuals filed in state court Abuse Claims against the Debtor and certain Non-Debtor Affiliates. [4-ApplchER-595 (¶4)]; *see* [5-ApplchER-877 (¶¶9–10)]. These Abuse Claims were consolidated into a judicial council coordinated proceeding in Alameda County Superior Court, *In re Northern California Clergy Cases*, JCCP 5108 (the "JCCP") [5-ApplchER-876–877 (¶¶2, 9–10)], where all but two cases involving the Debtor were subject to a general stay [4-ApplchER-595 (¶¶4–8)].

Nevertheless, the Debtor declared it was "in immediate financial distress and in need of a forum to resolve" the claims on a global basis. [5-ApplchER-878 (¶16); 5-ApplchER-897–899 (¶¶56, 59–63).] So on August 21, 2023, the Debtor filed in the Bankruptcy Court a voluntary

petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"),[2] and commenced the underlying "Bankruptcy Case." [5-ApplchER-901–906 (Petition).]

A committee made up of individuals with Abuse Claims against the Debtor, the Official Committee of Unsecured Creditors (the "Committee") (and co-appellee here), was appointed shortly thereafter. [5-ApplchER-873–874.] The Committee subsequently sought and, over objections from the Debtor and insurers, obtained relief from the automatic stay to permit the only two JCCP cases involving the Debtor that "had been worked up for deposition discovery and trial" [4-ApplchER-595 (¶6)] to proceed in state court. [5-ApplchER-826–835 (*Mem. Decision on Mot. for Relief from Stay*).] In seeking that relief, the Committee asserted that the two cases were selected through a state court bellwether selection process and set for trial when the Debtor filed for bankruptcy. [5-ApplchER-840, 5-ApplchER-844–847.]

[2] Unless otherwise stated herein, all statutory references refer to sections of the Bankruptcy Code.

### C. **The Adversary Proceeding**

The Debtor from the very beginning characterized its Bankruptcy Case as a mission of parity. It had, in its own words, "filed for chapter 11 relief … to design and implement a fair and equitable plan under which all claimants and plaintiffs can recover" – an objective it contrasted with alternative scenarios that "award[ed] certain claimants and plaintiffs more, simply because he or she was the first to 'race to the courthouse,' or less, because she or he was not prepared to bring her or his claims when a majority of other[s] … were." [5-ApplchER-883 (¶¶9–10); 5-ApplchER-898–899 (¶¶59–63).] The Debtor, the Committee, the Non-Debtor Affiliates, and the Debtor's insurers (including Appalachian) therefore were ordered to mediation. [5-ApplchER-864–872 (*Order Referring Case to Mediation and Appointing Mediator*).] The purpose of such mediation generally is a global resolution, leading to a consensual plan of reorganization. *See* [5-ApplchER-866 (¶3)]; *see also* [5-ApplchER-728–731 (¶¶3, 12)]. This typically occurs when a debtor, its insurers, and the committee reach agreement on monetary contributions (from the debtor and its insurers) and the terms of a reorganization plan. *See, e.g.*,

[5-ApplchER-728 (¶3) (describing successful diocesan Chapter 11 reorganizations)]; [5-ApplchER-883 (¶10) (same)].

In early 2025, however, the Debtor became aware that certain of the Abuse Claims pending in the JCCP potentially could be released for trial as against the Non-Debtor Affiliates.[3] [4-ApplchER-595–596 (¶¶8–10); 5-ApplchER-744–745 (7:16–8:22).] This threatened not only to disrupt the Debtor's nascent "reorganization efforts" by "forc[ing] the Debtor's limited personnel to split their attention between mediation and defending scattered lawsuits," but also to diminish the "limited insurance pool" belonging "to the bankruptcy estate." [4-ApplchER-567–568]; *see also* [4-ApplchER-567 ("[E]very covered lawsuit that proceeds to judgment against" a co-insured Non-Debtor Affiliate "automatically depletes" the coverage for the Debtor)].

To prevent that outcome, the Debtor initiated the "<u>Adversary Proceeding</u>" by filing in the Bankruptcy Court a complaint against the

[3] Abuse Claims against the Debtor could not move forward in the JCCP absent relief from the Bankruptcy Court. *See generally* 11 U.S.C. §362(a) (stating a bankruptcy petition "operates as a stay" of any "action or proceeding against the debtor," along with "any act to obtain possession of property of the estate," subject to certain exceptions not relevant here).

approximately forty JCCP plaintiffs whose Abuse Claims named as defendants both the Debtor and at least one Non-Debtor Affiliate (hereinafter, the "State Court Actions"). *See* [4-ApplchER-699–725 (Complaint)]. The Debtor sought declaratory judgment (or, alternatively, an injunction to the same effect) extending the automatic stay to the relevant Non-Debtor Affiliates [4-ApplchER-715–716] and later moved the Bankruptcy Court for effectively identical relief on a prejudgment basis [4-ApplchER-555–557] (the "Injunction Motion"). *See* [5-ApplchER-729–730 (¶¶6–8)].

Two concurrently filed declarations accompanied the Injunction Motion. [4-ApplchER-557]; *see* [4-ApplchER-592–681 (Gaspari Decl.); 4-ApplchER-682–698 (Weinstein Decl.)]. Both reiterated the central theme of the Adversary Proceeding: prosecution of Abuse Claims – even against the Non-Debtor Affiliates – would seriously harm the estate by eroding shared insurance and diverting resources and personnel away from reorganization efforts. [4-ApplchER-599–600 (¶¶22–26); 4-ApplchER-685–687 (¶¶7–12).] Immediately enjoining the State Court Action plaintiffs (*i.e.*, the defendants in the Adversary Proceeding) from pursuing their Abuse Claims against the Non-Debtor Affiliates thus was

necessary, in the Debtor's view, for a successful reorganization. *See, e.g.*, [4-ApplchER-589–590]; [4-ApplchER-494–496].

But one party to the Adversary Proceeding opposed the Injunction Motion – the Committee.[4] [4-ApplchER-526–554; 4-ApplchER-523–525.] The Committee generally claimed that the Debtor had not made the requisite showing for the requested relief, deriding the Debtor's erosion arguments as "speculati[ve]" [4-ApplchER-547–548] and asserting that the Debtor "fail[ed] to demonstrate" any reasonable likelihood of resource diversion [4-ApplchER-548–553]. *See also* [4-ApplchER-536 ("The terms of the relevant insurance policies are not before the Court, including the terms of the Insurers' obligations to defend or indemnify the insureds for the claims asserted in the State Court Actions.")].

Following a reply by the Debtor, featuring arguments that litigating the State Court Actions would not resolve "any issues necessary to a global resolution," and instead would "create[] … disparate treatment [that] privileg[es] some survivors over others" [4-ApplchER-

[4] The Committee was not a named defendant in the Adversary Proceeding but intervened with the Debtor's consent. *See* [4-ApplchER-536.]

494–496], the matter was fully briefed. *See* [4-ApplchER-481–498 (Reply)]. The Bankruptcy Court, however, did not adjudicate the dispute.

### D. The Stipulation

Instead, the Debtor on August 7, 2025 submitted in the Adversary Proceeding a proposal to resolve the matter. [4-ApplchER-453–480.] Entered into by and among the Debtor, the Committee, the defendants in the Adversary Proceeding "that ha[d] not previously agreed to stay their cases," and "the plaintiffs in the Released State Court Actions (defined below)" [1-ApplchER-20],[5] this proposal – the Stipulation – provided as follows:

- The parties "agree[d] to a stipulated injunction pursuant to [§105(a)], enjoining prosecution of the" State Court Actions, including as against "the Non-Debtor Affiliates" [1-ApplchER-22 (¶2)];
- Five State Court Actions identified on an exhibit to the Stipulation (defined therein as the "Released State Court Actions") were then "released from" the stipulated injunction to "proceed to trial" [*id.* (¶3)], and the applicable plaintiffs were authorized to "prosecute … the Released State Court Actions through final judgment" [*id.* (¶3.a)];

[5] Only one Released State Court Action plaintiff, John Doe SF 1260, appears to have been a defendant in the Adversary Proceeding. *Compare* [1-ApplchER-50 (list of Released State Court Actions)], *with* [1-ApplchER-45–48 (list of State Court Actions)], *and* [4-ApplchER-718–721 (list of State Court Action plaintiffs named as defendants in Adversary Proceeding)]. *See also* [4-ApplchER-702–703 (¶4) (defining defendants)].

- Entry of judgment in the Released State Court Actions would not "create a lien against any ***non-insurance*** asset of the Debtor or any Non-Debtor Affiliate" – nor could any plaintiff "collect, levy, execute, or otherwise enforce any judgment against any ***non-insurance*** asset(s) of the Debtor or any Non-Debtor Affiliate" [*id.* (¶3.c–d) (emphasis added)] – but the Stipulation specifically did not prevent the attachment or "enforcement" of a judgment lien on "the Debtor's and/or any Non-Debtor Affiliate's insurance policies or the proceeds of such policies" [*id.* (¶3.c)]; and

- All Abuse Claimants (not just those prosecuting Released State Court Actions) were permitted to (a) "make written settlement demands on the Debtor and any non-Debtor defendant(s)," (b) "request that the" recipients "tender those demands on their respective insurers," and (c) "request that the insurers pay those demands." [1-ApplchER-23 (¶4).]

Except for the foregoing or as otherwise specifically stated, "nothing" in the Stipulation provided "for the modification or vacatur of the automatic stay" in any other way. [1-ApplchER-23 (¶5).] Likewise, "[n]othing in th[e] Stipulation" was "an admission by any Party as to the allegations in the Injunction Motion or any opposition or reply filed thereto, or the merits of any of the issues raised therein." [*Id.* (¶6).]

### E. <u>The Motion & Response</u>

The Debtor next filed the Stipulation in the main Bankruptcy Case, exhibiting the Stipulation to the Motion, which was joined by the Committee. [3-ApplchER-409–418 (Motion)]; [3-ApplchER-423–451

(Stipulation)]; [3-ApplchER-391–396 (Committee's joinder)]. The Debtor in the Motion sought approval of the Stipulation pursuant to §§105(a) and 362 and Rules 4001 and 9019 of the Federal Rules of Bankruptcy Procedure (each, a "Rule") – that is, approval of the Stipulation as a "compromise or settlement" (under Rule 9019) and as a request for relief from the automatic stay (under §362 and Rule 4001). *E.g.*, [3-ApplchER-414]; *see also* [3-ApplchER-412 (¶13) (stating that the Stipulation would "resolve the Injunction Motion and other pending issues in the Debtor's Bankruptcy Case")].

Yet absent from the Motion was any analysis of "cause" for stay relief or any assessment of the factors that this Court has prescribed for the evaluation of settlements and compromises under Rule 9019. *See* [3-ApplchER-414–417]; *but cf. In re Mac Donald*, 755 F.2d 715, 717 (9th Cir. 1985) (the Bankruptcy Code "authorizes the bankruptcy court to lift the stay 'for cause shown'"); *In re A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986) (listing four factors "the court must consider" when "determining the fairness, reasonableness and adequacy of a proposed settlement agreement").

The Debtor instead simply claimed that the requested relief was "appropriate" because it would "reduce any future burdensome litigation over the Injunction Motion" [3-ApplchER-416] – at "little to no additional expense to the estate" [3-ApplchER-417] – while also "facilitating the mediation process" [3-ApplchER-417]. *See also* [3-ApplchER-417 (the Stipulation "allows for the Debtor, … many of the Non-Debtor Affiliates[,] and their professionals to focus … on the mediation, and on … reach[ing] a prompt consensual resolution of this Bankruptcy Case.")]; *but see* [5-ApplchER-729–730 (¶¶6–7) ("Allowing the [State Court Actions] to go forward against the co-insured co-defendants participating in mediation certainly will interfere with and delay global efforts to settle … in mediation.")].

And even those arguments were barely (if at all) explored. The Debtor in the Motion did not, for instance, explain how the demand-and-tender process would "assist in facilitating the mediation process" [3-ApplchER-417] or why lifting the stay for the (five) Released State Court Actions that were selected – as opposed to the dozens of State Court Actions that were not – would promote the "prompt consensual resolution of th[e] Bankruptcy Case" [*id.*]. Also absent was any discussion

whatsoever of the Released State Court Actions themselves; outside of an exhibit listing case numbers and abbreviated case captions [3-ApplchER-451], the Motion lacked so much as a single relevant detail. *See generally* [3-ApplchER-409–418].

This dearth of information extended to the supporting papers: a concurrently filed *Request for Judicial Notice* [3-ApplchER-400–404] (the "RJN") and a declaration executed by the Debtor's Vicar General, Father Summerhays [3-ApplchER-397–399] (the "Summerhays Declaration"). The former consisted entirely of documents from the Adversary Proceeding and initial Bankruptcy Case filings,[6] none of which supplied more than (at most) background details. *See* [3-ApplchER-401–403]. And Fr. Summerhays offered little more; beyond echoing the sentiment expressed in the Motion, he declared merely that the Stipulation was in

---

[6] The RJN, which was never granted, referenced twenty-one documents. They consisted of: (a) early filings in the Bankruptcy Case (the petition, a first-day declaration, an order granting a first-day motion, and the notice of the Committee's appointment); (b) the Adversary Proceeding complaint, briefing on the Injunction Motion, and related Adversary Proceeding documents (*e.g.*, the Gaspari and Weinstein declarations supporting the Injunction Motion, the Bair declaration filed in opposition to the Injunction Motion); and (c) stipulations and related orders from the Adversary Proceeding (*e.g.*, permitting intervention by the Committee). [3-ApplchER-401–403.]

his "opinion … adequate, fair, and reasonable, and is in the best interests of the estate and creditors." [3-ApplchER-399 (¶6)]; *see also* [3-ApplchER-398–399 (¶5) ("In my opinion and to my knowledge," the Stipulation "dramatically alleviates the burden of litigation, and allows" a greater "focus … on the mediation, and on … collective efforts to reach a prompt consensual resolution of th[e] Bankruptcy Case.")].

Given these and other deficiencies, Appalachian and certain other insurers of the Debtor objected to the Motion. [3-ApplchER-232–261]; [3-ApplchER-229–231]. The insurers argued that the Released State Court Actions were not properly selected bellwether cases – not least because they were almost certainly handpicked by the Committee – and would not facilitate mediation in any event; even if the Released State Court Actions were representative, the insurers noted, each would at a minimum need to reach verdict well before confirmation of a Chapter 11 plan, yet nothing indicated that even one of the five was trial-ready. [3-ApplchER-240, 3-ApplchER-242–247]; *cf.* [5-ApplchER-729 (¶6) ("Settlement data points and paths for these cases are readily known and achievable here.")]. The insurers further highlighted the uniquely unfair nature of the Stipulation: not only did it prefer five plaintiffs over all

other Abuse Claimants in violation of §1123(a)(4), but it also shifted effectively all risk to the insurers by protecting indefinitely the assets of the Debtor and Non-Debtor Affiliates. [3-ApplchER-237–239, 3-ApplchER-245–246.]

Each of the Debtor and the Committee replied in support of the Motion. [3-ApplchER-216–228 (Debtor reply), 3-ApplchER-214–215 (Pascuzzi Decl. in supp. of Debtor reply), 3-ApplchER-206–213 (Committee reply).] The Debtor focused primarily on the settlement approval factors and "cause" for stay relief, offering a threadbare (and belated) defense of the former and a wholly unsubstantiated account of the latter. [3-ApplchER-224–227 (generically reciting settlement factors)]; [3-ApplchER-227–228 (stating, "[t]o the extent the *Curtis* factors apply … they support the granting of the Motion," but failing to analyze or apply any of them)].[7] *But cf., e.g.*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434

[7] The *Curtis* factors (from the eponymous case, *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)) are twelve factors that bankruptcy courts in this Circuit typically analyze when evaluating "cause" for stay relief to permit the continuation of litigation in a non-bankruptcy forum. *E.g.*, *In re Plumberex Specialty Prods., Inc.*, 311 B.R. 551, 559 (Bankr. C.D. Cal. 2004).

(1968) ("*TMT Trailer*") ("Although we are told that the alternative to settlement was 'extensive litigation at heavy expense' and 'unnecessary delay,' there is no evidence that this conclusion was based upon an educated estimate .... Litigation and delay are always the alternative to settlement"). The Committee for its part asserted that the insurers could not raise "on behalf of" Abuse Claimants complaints "about how [Abuse Claimants] are treated in th[e]" Bankruptcy Case [3-ApplchER-208] and further claimed that the Stipulation "advances the interests of all" Abuse Claimants because the demand letters would "put the Insurers at risk of state-law consequences … that do not presently exist" [3-ApplchER-210].

Both also maintained that the Released State Court Actions were selected jointly, not unilaterally, and that the insurers' representativeness concerns were misplaced. [3-ApplchER-208 (arguing the Released State Court Actions "readily meet the criteria for bellwether trials," and are a "representative sampling"); 3-ApplchER-221–222 (arguing "the Committee did not unilaterally select the Released State Court Actions.").] Neither provided any evidence in support of those claims. *See generally* [3-ApplchER-216–228, 3-ApplchER-206–213, 3-ApplchER-215].

### F. <u>The Order</u>

The Motion was set for hearing on September 4, 2025. [3-ApplchER-406.] It did not go forward. The Bankruptcy Court on September 2 instead granted the Motion via Docket Text Order and dropped the hearing from the calendar, reciting that it had "considered" the parties' briefing and stating:

> It is worthy of note that not a single abuse claimant whose action will remain stayed has objected. The motion is well-taken, easily satisfies the A & C test by considering and weighing the factors, as the court does independently here, and represents a needed, good faith settlement of a bona-fide dispute. The objectors, assuming they even have standing, have shown no meaningful prejudice. The [Committee] did not unilaterally select the test cases. What other courts have done in similar cases is interesting but not controlling. The demand letters, if they even would be prohibited by the automatic stay, which is far from clear, are to some extent pass-throughs as a conduit to the insurers, who cannot be surprised or harmed by them. All other objections are OVERRULED …. The 14-day stay is waived. Debtor should serve and upload an appropriate order GRANTING the motion for the reasons stated in it and in this docket text order.

[1-ApplchER-52.]

Two weeks later, the Bankruptcy Court entered the Written Order. [1-ApplchER-15.] The Written Order granted the Motion and approved

the Stipulation on the grounds that "the legal and factual bases set forth in the Motion establish[ed] just cause for the relief granted … as set forth in the Motion and the Court's Docket Text Order …." [1-ApplchER-16.] It did not contain any independent findings of fact or conclusions of law, or any rationale in support of the relief it granted beyond the sparse reasoning it purportedly incorporated by reference. [*Id.*]

### G. <u>The District Court Order</u>

Appalachian and certain other insurers timely appealed the Order to the District Court. [6-ApplchER-1002–1010, 6-ApplchER-957–1001.] After administrative consolidation [2-ApplchER-195–204] and issuance of a briefing schedule, Appalachian and the other insurers submitted opening briefs. *E.g.*, [2-ApplchER-157–194]. There, the appellants sought reversal or vacatur and limited remand of the Order based on the Bankruptcy Court's (a) failure to apply properly the "cause" standard (with respect to stay relief) and further failure to consider the insurers' interests (with respect to settlement approval); (b) unsupported finding regarding the selection of the Released State Court Actions; and (c) injection of unlawful discrimination into the Bankruptcy Case by

permitting five Abuse Claimants to leapfrog all others. *See generally* [*id.*]; [2-ApplchER-64–90 (reply)].

The Debtor and Committee filed separate response briefs. [2-ApplchER-91–137 (Debtor brief), 2-ApplchER-138–156 (Committee brief).] In arguing that sufficient evidence supported entry of the Order, the Debtor asserted that the Motion adequately "incorporated all the evidence, pleadings and arguments in the Adversary Proceeding," and that the Bankruptcy Court judicially noticed those documents for historical and procedural context. [2-ApplchER-123.] The "statements contained" in the RJN documents, the Debtor explained, "were not offered for the truth of the matter asserted …." [2-ApplchER-124.]

The Committee claimed that the Bankruptcy Court "was well within its discretion to approve a settlement designed to move" the Bankruptcy Case "toward resolution." [2-ApplchER-142.] According to the Committee, the Stipulation achieved this goal by "creating … litigation and settlement mechanisms" designed to "introduce[] practical pressure" by exposing insurers to "real-world consequences." [2-ApplchER-141–142.] That is, the "bounded, concrete litigation risk" created by the Stipulation, coupled with its "prohibition of enforcement

against non-insurance assets," was purposefully designed to "intensif[y] the negotiation environment." [2-ApplchER-151.]

Following further briefing and oral argument, the District Court on June 22 affirmed the Order [1-ApplchER-2–14], determining that the Bankruptcy Court "reasonably concluded that the [Stipulation] legitimately pushed the case forward" [1-ApplchER-14] and therefore "did not abuse its discretion" in granting the Motion and approving the Stipulation. [1-ApplchER-10, 1-ApplchER-12.] The District Court framed its analysis around two other district court decisions affirming "similar" orders: *Interstate Fire & Cas. Co. v. Roman Catholic Bishop of Sacramento*, Nos. 2:25-cv-02262-WBS & 2:25-cv-02288-WBS, 2026 WL 508073 (E.D. Cal. Feb. 24, 2026), *appeal docketed*, No. 26-2812 (9th Cir. May 4, 2026), and *In re Roman Catholic Bishop of Oakland Bankr. Automatic Stay Appeal*, 680 B.R. 658 (N.D. Cal. 2026), *appeal docketed,* No. 26-3221 (9th Cir. May 19, 2026) – describing both as "highly persuasive." [1-ApplchER-7.]

In reaching its decision, the District Court emphasized the statements from the Order reciting that the Bankruptcy Court "applied the 'A & C test'" [1-ApplchER-12 (quoting Docket Text Order)] and

"determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted" [1-ApplchER-10 (quoting Written Order)]. *See also* [1-ApplchER-10–11 ("[T]he Gaspari and Weinstein declarations" referenced in the RJN "provided an ample evidentiary basis")]. This text was in the District Court's view proof positive that the Bankruptcy Court "applied the proper legal standard" [1-ApplchER-10] for stay relief and "considered Appellants' interests" vis-à-vis the Stipulation [1-ApplchER-12]. *See also* [1-ApplchER-10 (defending the Bankruptcy Court's purported determination of "cause" for stay relief since the Written Order "incorporated by reference and adopted the legal standard set forth in [the] [M]otion.")].

The District Court next rejected the appellants' concerns with the Stipulation itself. Most prominently, the District Court brushed off representativeness as "beside the point." [1-ApplchER-11.] It simply did not matter "whether the five released cases were truly representative," the District Court explained, because even "a worst-case scenario for litigation exposure" – *i.e.*, where all five Released State Court Actions were the Abuse Claimants' "strongest cases" – "could reasonably be viewed as providing relevant information for settlement." [*Id.*] The

District Court also deemed "individualized findings for each case released from the automatic stay" unnecessary to the mandatory "case-by-case" determination. [1-ApplchER-12.]

Nor did the Stipulation "wall[] off" non-insurance assets [1-ApplchER-12]; from the District Court's perspective, it at most shifted "only the sequence" of events such that the insurers "face initial liability" (instead of their insureds) "followed by [the Debtor's] non-insurance assets through the plan confirmation process." [1-ApplchER-13 (citing Cal. Ins. Code §11580(b)(1)).] And while the District Court acknowledged that "this could change some incentives in the present moment," it declined to explore any of the consequences of that "change" since a hypothetical future plan meant "both insurance and non-insurance assets will eventually have to satisfy claims." [*Id.*]

Curiously, however, the District Court adopted almost the exact opposite reasoning when dismissing the appellants' discrimination arguments. [1-ApplchER-14.] There, the District Court concluded in the first instance that "the bankruptcy court did not improperly discriminate among claimants" because the anti-discrimination requirement of §1123(a)(4) "applies to plan confirmation, not modification of the

automatic stay." [1-ApplchER-14.] And if it did apply, the District Court added, the Stipulation still would not "inevitably prejudice claims in a hypothetical future plan" because the five plaintiffs are barred from "enforc[ing] any judgment obtained against … non-insurance assets," plus the Bankruptcy Court "retains the ability to balance the interests of those claimants with the others when considering a plan." [*Id.*] The District Court further reasoned that, because the Debtor's policies have "no applicable aggregate limits," recovery "by one claimant … does not reduce available insurance for other claimants under the same policies." [1-ApplchER-14 (quoting [4-ApplchER-524 (¶4)]).]

The District Court did not explain how any of these purported safeguards redress the permanent advantage that will be conferred on the five plaintiffs if they reduce their Abuse Claims to judgment while all others retain only unliquidated claims. *See generally* [*id.*] Likewise absent from the DC Order is any justification for the suggestion that verdicts (if returned in time) in five unrepresentative cases "could reasonably be viewed as providing relevant information" for a global "settlement" of all claims. *See* [1-ApplchER-11].

One week after the District Court decided the appeal, the Debtor

and the Committee announced a settlement in principle that ***excludes*** the insurers: a financial contribution from the Debtor and related entities of $395 million to be distributed through a plan of reorganization supported by the Committee. *See Roman Catholic Archbishop of San Francisco reaches agreement in principle on a $395 million bankruptcy settlement*, Archdiocese of San Francisco (June 29, 2026), https://sfarch.org/roman-catholic-archbishop-of-san-francisco-reaches-agreement-in-principle-on-a-395-million-bankruptcy-settlement/ (last visited Oct. 22, 2026).[8] That plan has now been filed with the Bankruptcy Court and the insurers are not part of it. *See generally* Joint Ch. 11 Plan of Reorganization for The Roman Catholic Archbishop of San Francisco, Dated: Sep. 3, 2026, *In re The Roman Catholic Archbishop of San Francisco*, No. 23-30564 (Bankr. N.D. Cal. Sep. 3, 2026), Dkt. No. 1933. To the contrary, the plan proposes an assignment of the Debtor's rights under its insurance policies (but not the policies themselves) so that Abuse Claimants can pursue non-settling insurers either through a post-

---

[8] Archived at https://web.archive.org/web/20260630232146/https://sfarch.org/roman-catholic-archbishop-of-san-francisco-reaches-agreement-in-principle-on-a-395-million-bankruptcy-settlement/

confirmation trust or on their own. *See id.* at §6.2.5. No plan has been confirmed, the Order remains in effect, and the five Released State Court Actions and the demand-letter authorization continue to expose Appalachian to judgments, liens, and alleged extracontractual liability. If anything, the proposed plan – which would leave non-settling insurers as the principal target of post-confirmation litigation (assuming the plan is confirmed) – heightens the importance of confining stay relief to representative cases.

### H. **<u>This Appeal</u>**

Appalachian on July 21, 2026 timely noticed an appeal of the DC Order. [6-ApplchER-912.] The appeal was docketed on July 22. Pursuant to a September 9 *Order*, all appeals of the DC Order have been consolidated under this case number, and opening briefs are due October 26. [Dkt. No. 14.1.] This brief is timely filed in accordance therewith.

## **<u>STANDARD OF REVIEW</u>**

This Court "review[s] a bankruptcy court decision independently and without deference to the district court's decision." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). Decisions to modify the automatic stay and decisions to approve compromises are reviewed for an abuse of

discretion. *In re Conejo Enters., Inc.*, 96 F.3d 346, 351 (9th Cir. 1996) (applying abuse of discretion standard to decision to grant relief from the automatic stay); *In re A & C Props.*, 784 F.2d at 1380 (applying abuse of discretion standard to decision to approve compromise).

The abuse of discretion standard requires a two-step process. First, the reviewing court must analyze "de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court failed to do so, the Court "must conclude it abused its discretion." *Id.* Second, if the bankruptcy court identified the correct legal rule, the Court "determine[s] whether the [bankruptcy] court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quotations omitted). If any of these three apply, then the bankruptcy court abused its discretion. *Id.*; *see also id.* at 1262 n.21.

## <u>SUMMARY OF ARGUMENT</u>

This appeal presents a question that bankruptcy courts in diocesan Chapter 11 cases continue to answer differently. The question is whether stay relief for selected abuse cases, on the theory that verdicts will supply

settlement data points and assist in global resolution, is appropriate when the moving party fails to show that the cases are representative of the claims pool or can be resolved in time to matter. Many bankruptcy courts have answered that question in the negative. *See, e.g.*, *In re Roman Catholic Archbishop of Baltimore*, No. 23-16969-MMH, 2026 WL 1625109, at *4–6 (Bankr. D. Md. June 5, 2026) (finding "speculative at best and inadequate to outweigh the significant risks to the bankruptcy estate and all Survivors" the argument that stay relief for seven claimants would foster negotiations and lead to settlement); *In re The Roman Catholic Bishop of San Diego*, No. 24-02202-CL11 (Bankr. S.D. Cal. Aug. 14, 2025), Dkt. No. 851, at 3–5 (Order on Motion for Stay Relief) (denying stay relief for sixteen claimants where the committee "fail[ed] to establish a prima facie case for §362(d)(1) cause"); [3-ApplchER-318–335 (Transcript of Decision, *In re The Diocese of Camden, N.J.*, No. 20-21257-JNP (Bankr. D.N.J. July 8, 2025) (denying a joint motion by the debtor and committee seeking stay relief to permit eight claimants to proceed in state court while appeals of the plan confirmation order were pending))]. Some have allowed it, as did the Bankruptcy Court and District Court below. [1-ApplchER-2–14]; *see also Roman Catholic*

*Bishop of Sacramento*, 2026 WL 508073, *appeal docketed*, No. 26-2812 (9th Cir. May 4, 2026); *In re Roman Catholic Bishop of Oakland Bankr. Automatic Stay Appeal*, 680 B.R. 658, *appeal docketed*, No. 26-3082 (9th Cir. May 14, 2026); *In re The Roman Catholic Bishop of Santa Rosa*, No. 23-10113 (Bankr. N.D. Cal. Aug. 26, 2025), Dkt. No. 1480 (Order on Debtor's Mot. to Approve Stipulation Modifying the Automatic Stay), *aff'd*, No. 3:25-cv-08140-TLT (N.D. Cal. June 29, 2026), Dkt. No. 36.

The answer turns on a premise both the Debtor and Committee adopted here: the goal of this Bankruptcy Case is global resolution through mediation. *E.g.*, [3-ApplchER-416–417.] Stay relief justified by that goal must further it, and litigating a small number of pending cases furthers a global settlement only if the cases tried are representative and can reach verdict in time to inform the parties' judgment. The Order approved stay relief meeting neither condition while shielding every non-insurance asset of the Debtor and its Non-Debtor Affiliates, leaving their insurers, including Appalachian, to bear the consequences.

The Bankruptcy Court never conducted the inquiry §362(d)(1) requires. "Cause" is determined case by case, on the facts underlying the motion. *E.g.*, *In re Conejo Enters., Inc.*, 96 F.3d at 352. The Docket Text

Order neither mentions cause nor cites §362 [1-ApplchER-52], and the Written Order recites only that the Motion established "just cause" [1-ApplchER-16]. The District Court treated that recital as incorporating the Motion's analysis, but the Motion contained none; it listed the *Curtis* factors in a footnote and applied none of them. [3-ApplchER-416–417.] The Bankruptcy Court did not identify or apply §362(d), and therefore abused its discretion.

Even on its own terms, the Debtor's showing of "cause" fails. The only cause asserted was that the five Released State Court Actions would facilitate mediation and prompt resolution of the Bankruptcy Case. [3-ApplchER-417.] That rationale is viable only if the cases will be resolved while their results can still inform a settlement, and only if those results reflect the broader pool of claims. The record establishes neither. The Motion identified the five cases solely by number and caption and said nothing more. [3-ApplchER-451.] The Debtor's own RJN documents showed none were near trial. [4-ApplchER-595 (¶¶6–7).] And the declarations the District Court relied on were, by the Debtor's own account, not offered for their truth [2-ApplchER-123–124]; they addressed the burden of litigating forty cases, not the benefit of trying

five. Nor are unrepresentative cases harmless "worst-case" data. [1-ApplchER-11.] Verdicts in the claimants' strongest cases will inflate expectations across the pool and make settlement less likely. Relief that frustrates its own stated purposes is illogical, implausible, and, here, not supported by inferences drawn from the record.

The Stipulation also fails the "fair and equitable" standard for compromise approval. *TMT Trailer* and *A & C Properties* require an informed, independent judgment that considers the interests of non-settling parties. *TMT Trailer*, 390 U.S. at 434–35; *In re A & C Props.*, 784 F.2d at 1383. The Bankruptcy Court overruled the insurers' objections with conclusory statements and no examination of their substance. [1-ApplchER-52.] But reciting the correct test without analysis does not suffice, and creditor silence proves nothing. The law does not entitle a party objecting to have its objection sustained, but it does require that it be considered. A settlement that genuinely weighed Appalachian's interests would have identified representative cases. Instead, the Stipulation walls off every non-insurance asset of the Debtor and the Non-Debtor Affiliates, removing any incentive for the insureds to contest liability or damages.

The District Court acknowledged that "this could change some incentives in the present moment," but satisfied itself that ultimately "only the sequence" in which assets satisfy claims would change. [1-ApplchER-13.] That answer simultaneously overlooks the status of the Non-Debtor Affiliates (none of which are in bankruptcy) and the practically indefinite duration of the stipulated injunction (which has no time limit). The resulting prejudice cannot be explained away by the potential that a plan may be confirmed in the future.

Finally, the Order upsets the balance the Bankruptcy Code strikes between debtors and those drawn into bankruptcy. The automatic stay is a shield, not a sword, *Sternberg v. Johnston*, 595 F.3d 937, 948 (9th Cir. 2010), *overruled on other grounds by In re Schwartz-Tallard*, 803 F.3d 1095, 1097 (9th Cir. 2015) (en banc), and this Court has affirmed denial of stay relief sought for negotiation leverage, *In re Conejo Enters., Inc.*, 96 F.3d at 353. Yet by the Committee's own description, the Stipulation was designed to intensify negotiations [2-ApplchER-151] and expose insurers to state-law consequences [3-ApplchER-210]. It also prefers the five Released State Court Action plaintiffs over all others similarly situated. Those five alone may liquidate their claims, pursue

liens on insurance, and gain leverage no stayed claimant can match. That is unequal treatment the Bankruptcy Code forbids in a reorganization plan, and the proscription cannot be avoided by pre-confirmation dealings. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468–70 (2017). The District Court's observation that the policies lack aggregate limits [1-ApplchER-14] does not cure the defect; it compounds the problem. Each verdict in an unrepresentative case becomes a benchmark for the entire pool. Assuming no aggregate limits, that inflated exposure multiplies across every claim and falls on the insurers alone.

This Court should reverse and remand for further proceedings. In the alternative, this Court should vacate and remand with instructions for the Bankruptcy Court to select, with Appalachian's input, representative cases to be released from the stay.

## ARGUMENT

### I. THE BANKRUPTCY COURT DID NOT ENGAGE IN THE CORRECT LEGAL INQUIRY

Under well-settled law, requests to modify the automatic stay and requests for approval of a compromise or settlement are subject to different legal criteria. *Compare, e.g.*, 11 U.S.C. §362(d)(1) (stay relief

"for cause"), *with, e.g.*, *In re A & C Props.*, 784 F.2d at 1381 (a settlement must be "fair and equitable"). Thus, a movant seeking (and a bankruptcy court granting) relief from the automatic stay ***and*** approval of a settlement or compromise must analyze and apply both standards. *Cf., e.g.*, *In re Lahijani*, 325 B.R. 282, 284 (B.A.P. 9th Cir. 2005) (citing *In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003)) ("We have held that [the] sale of avoiding actions may simultaneously implicate [a] §363 'sale' analysis and [a] 'compromise' analysis under Federal Rule of Bankruptcy Procedure 9019(a)."); *id.* (concluding that "a bankruptcy court ***must***, in addition to treating [a transaction] as a sale, independently evaluate the transaction as a settlement under the prevailing 'fair and equitable' test" under certain circumstances (emphasis added)); *In re Berkeley Del. Court, LLC*, 834 F.3d 1036, 1040 (9th Cir. 2016) (agreeing "with the BAP in *Mickey Thompson*"). That did not happen here.

### A. <u>The Bankruptcy Court Did Not Apply §362</u>

To start, the Bankruptcy Court did not undertake any evaluation of §362(d). That section in pertinent part permits relief from the automatic stay ("such as … terminating, annulling, modifying, or

conditioning such stay") "for cause" shown. 11 U.S.C. §362(d)(1). It does not, however, define "cause." *See id*. (stating only that "cause[] includ[es] the lack of adequate protection"); *In re Conejo Enters., Inc.*, 96 F.3d at 352 ("Cause has no clear definition" (quoting *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990))). "Cause" therefore is an *ad-hoc* inquiry, the precise contours of which may take different forms. *See In re Mac Donald*, 755 F.2d at 717.

Where a movant seeks to continue litigation pending in a non-bankruptcy forum, for instance, many courts weigh twelve non-exclusive factors intended to capture various considerations relevant to the automatic stay. *E.g.*, *In re Curtis*, 40 B.R. at 799–800; *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) (stating "the *Curtis* factors are appropriate, nonexclusive, factors to consider"); *In re Plumberex Specialty Prods., Inc.*, 311 B.R. at 559 (describing their widespread use); *see also In re Bogdanovich*, 292 F.3d 104, 110, 110 n.1 (2d Cir. 2002) (quoting *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990)). Other courts, by contrast, apply a more streamlined three-factor analysis, *see In re Aleris Int'l, Inc.*, 456 B.R. 35, 47 (Bankr. D. Del. 2011), while still

others – including this Court – have not explicitly endorsed any specific multifactor test. *E.g.*, *In re Conejo Enters., Inc.*, 96 F.3d at 352.

But at the heart of every test – and as this Court ***has*** stated explicitly – is the same controlling principle: "discretionary relief from the stay" (*i.e.*, stay relief "for cause") "must be determined on a case by case basis." *In re Mac Donald*, 755 F.2d at 717; *e.g.*, *In re Tucson Estates, Inc.*, 912 F.2d at 1166 ("'Cause' has no clear definition and is determined on a case-by-case basis."). "The ultimate determination whether to lift [the] stay" thus "depends upon the facts underlying a given motion," *In re Bogdanovich*, 292 F.3d at 110; *accord, e.g.*, *In re Conejo Enters., Inc.*, 96 F.3d at 352, and whether the "totality of the circumstances in each case" demonstrates that stay relief is warranted, *In re Brotman Med. Ctr., Inc.*, BAP No. CC-08-1056-DKMo, 2008 WL 8444797, at *5 (B.A.P. 9th Cir. Aug. 15, 2008). *See also* H.R. Rep. No. 95-595, at 344 (1977) ("The facts of each request will determine whether relief is appropriate under the circumstances."), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6300.

This analysis was wholly absent from the proceedings below. Nothing in the Docket Text Order, which contains the sum and substance

of the Bankruptcy Court's reasoning on the Motion, in any way reflects the requisite (or any) evaluation; it does not mention "cause" and lacks so much as a citation to §362. [1-ApplchER-52.] The Written Order that followed likewise lacks any informed discussion of §362, reciting merely that the Bankruptcy Court had "authority pursuant to" §362(d) "to order relief from that automatic stay" and that the Bankruptcy Court "determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted." [1-ApplchER-16.] Put simply, the Order is facially devoid of ***any*** assessment of the automatic stay – much less the "case-by-case" determination required by law. *In re Tucson Estates, Inc.*, 912 F.2d at 1166.

The District Court nevertheless attempted to salvage the Order by pointing to the prefatory language stating that "the legal and factual bases set forth in the Motion establish just cause for the relief granted." [1-ApplchER-10 (quoting Written Order).] According to the District Court, "[t]hat ruling incorporated by reference and adopted the legal standard set forth in" the Motion – where the "*Curtis* factors were analyzed" – and therefore demonstrated that the Bankruptcy Court "applied the proper legal standard." [1-ApplchER-10.] This is incorrect.

As a general rule, application of the law requires some identifiable evaluation of it. A trial court, in other words, must do more than merely recite the correct legal standard; it must also "actually engage[] in the … analysis" that applicable law demands. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000) ("We would not ordinarily reverse a court for failing to articulate the … test, as long as it actually engaged in the equitable analysis … mandate[d]. However, it does not appear the district court did so here."); *see also Lemoge v. United States*, 587 F.3d 1188, 1193 (9th Cir. 2009) ("[W]e are concerned that the substance of the district court's analysis wholly omitted discussion of one of the four [controlling] factors …. Therefore, following the test stated … in *United States v. Hinkson*, we conclude that the district court abused its discretion").

The Motion here offered no such analysis for the Bankruptcy Court to "incorporate[] by reference and adopt[]." [1-ApplchER-10.] All told, the Motion devotes approximately twenty-five lines of text and one footnote to §362. *See generally* [3-ApplchER-414–417]. Of that total: twenty lines set forth the general statutory framework for stay relief (*e.g.*, the contents of §362(a) and (d), plus quotations establishing the stay's

purpose); the footnote lists – but does not evaluate – the *Curtis* factors; and the balance consists of the Debtor's bare contention that "approval of the Stipulation … is appropriate under the circumstances."[9] [3-ApplchER-415–417.] Precisely none of this is "analysis." *Bateman*, 231 F.3d at 1224.

As a result, the Bankruptcy Court's purported "incorporat[ion] by reference and adopt[ion] [of] the legal standard set forth in" the Motion [1-ApplchER-10] does not change the outcome: the Bankruptcy Court in granting the Motion and approving the Stipulation did not "identif[y] and apply[] the correct legal rule" – §362(d)(1) – "to the relief requested," and therefore abused its discretion. *Hinkson*, 585 F.3d at 1263. The Order can, and should, be reversed and remanded for this reason alone.[10]

---

[9] The Debtor also asserted that "modification of the stay … to allow demand letters … will assist in facilitating the mediation process." [3-ApplchER-417.] To the extent this was intended to be an alternative showing of "cause," it, too, is completely unexplored.

[10] The Bankruptcy Court further erred by failing to make any findings of fact on the "cause" for stay relief. "Under the rules governing proceedings in the bankruptcy courts," a bankruptcy judge is required to "find the facts specially and state separately its conclusions of law thereon" when resolving "a dispute over a request for relief from the automatic stay," *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999) (quoting Fed. R. Civ. P. 52(a)), and the failure to do so necessitates remand. *See In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991) ("If the bankruptcy court's

### B. The Bankruptcy Court's Analysis Was Fundamentally Flawed

The Order is equally flawed under the second step of the *Hinkson* inquiry. That is, even assuming (which Appalachian does not) that the Bankruptcy Court identified and applied §362(d)(1), its "application of [that] legal standard" – along with Rule 9019 – was "illogical, implausible, [and] without support" in the record. *Hinkson*, 585 F.3d at 1262 (quotations omitted); *see also id.* at 1262 n.20 (explaining that the second step prevents affirming an order "reflect[ing] the trial court's subjective determination or whim").

1. There Was No "Cause" for Stay Relief

This is most obviously true with respect to §362(d)(1). Given the *ad-hoc* nature of the §362(d)(1) inquiry, a movant in this Circuit possesses some degree of flexibility in its articulation and presentation of "cause" for relief. *See, e.g.*, *In re Mac Donald*, 755 F.2d at 717; *accord In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (the statute

factual findings are silent or ambiguous as to a material factual question, the district court ***must*** remand the case…." (emphasis added)); *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737–38 (6th Cir. 1994) (factors supporting "cause" for stay relief are factual determinations). That is the appropriate result here.

"afford[s] flexibility to the bankruptcy courts"). But the movant also bears the (initial) burden of supporting with ***evidence*** the "cause" alleged. *E.g.*, *In re Plumberex Specialty Prods., Inc.*, 311 B.R. at 557 ("[T]he party seeking relief must first establish a *prima facie* case that 'cause' exists for relief under §362(d)(1)."); *accord, e.g.*, *In re Bogdanovich*, 292 F.3d at 110 ("The burden is on the moving party … to make the initial showing of cause."); *In re Jim's Maint. & Sons Inc.*, 418 F. App'x 726, 728 (10th Cir. 2011) (similar); *Minn-Kota Farm Agency, Inc. v. Home Fed. Sav. & Loan Ass'n*, No. 92-1825, 1992 WL 323066, at *1 (8th Cir. Nov. 11, 1992) ("The party seeking relief from the automatic stay is required to establish a prima facie case of cause"). Absent such a showing, "relief from the automatic stay should be denied." *In re Plumberex Specialty Prods., Inc.*, 311 B.R. at 557 (first citing *In re Bogdanovich*, 292 F.3d at 110; then citing *In re Mazzeo*, 167 F.3d at 142; and then citing *In re Kim*, 71 B.R. 1011, 1015 (Bankr. C.D. Cal. 1987)).

Therein lies the problem here. Read charitably, the Motion contains two alleged bases of "cause" for stay relief: (a) the *Curtis* factors support continuation of the Released State Court Actions, *see* [3-ApplchER-416]; and/or (b) lifting the stay for the Released State Court

Actions (and to permit demand letters) would "assist in facilitating the mediation process" [3-ApplchER-417]. The Debtor therefore bore the burden of making a *prima facie* showing of at least one of those grounds for relief. *In re Plumberex Specialty Prods., Inc.*, 311 B.R. at 557; *In re Bogdanovich*, 292 F.3d at 110.

The evidence necessary to discharge that burden was straightforward. With respect to the *Curtis* factors, a movant must demonstrate that the pending litigation satisfies whichever elements are applicable. *E.g.*, *In re Plumberex Specialty Prods., Inc.*, 311 B.R. at 560–65; *In re Bogdanovich*, 292 F.3d at 110 ("Not every … factor[] [is] relevant in every case."). If facilitating mediation with verdict data is the "cause," as it was in the Motion, the movant must show that the applicable cases are at least close to trial and are representative of the remainder – such that they reflect the range of claims, defenses, damages, and other variables present in the overall claims pool.

That is how a "bellwether trial[]" operates. [3-ApplchER-208.] As this Court has explained, "[a] bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky

questions of causation or liability." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015) (citation omitted). But a case can demonstrate the "likely value" of "similar cases" only if it is in fact similar to them. *Id.*; *cf. In re Roman Catholic Archbishop of Baltimore*, 2026 WL 1625109, at *6 (concluding that "the record before the Court does not establish th[e] fact that" "modifying the stay will encourage a consensual resolution"); *In re The Roman Catholic Bishop of San Diego*, Dkt. No. 851, at 4 (denying committee's motion to lift the automatic stay so that bellwether verdicts could establish case values, holding that the committee failed "to establish a prima facie case for §362(d)(1) cause," and noting "[i]f jury verdicts are helpful, they are months or years away from trial, followed by trial time and remittitur before final judgment."); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1020 (5th Cir. 1997) (in non-bankruptcy context, holding that "representative" cases are required "before a trial court may utilize results from a bellwether trial for a purpose that extends beyond the individual cases tried"). Both allegations of "cause" thus require specific, individualized information regarding the litigation at issue.

The Committee knows this: when it earlier sought stay relief for the first two JCCP cases, it stressed that those cases had emerged from a state-court bellwether selection process and were set for trial. [5-ApplchER-840, 5-ApplchER-844–847.] But here, neither the Debtor nor the Committee offered any comparable showing – no selection methodology, no trial dates, and no timetable by which any verdict could inform the mediation.

That evidence, along with evidence of "cause" more generally, was wholly absent from the record below. The sole supporting declaration offered with the Motion, the Summerhays Declaration, provided only Fr. Summerhays' "opinion" that "allowing the 5 Released State Court Actions to go forward … allow[ed] the Debtor … many of the Non-Debtor Affiliates" and their respective "professionals" to "focus their attention on the mediation, and on their collective efforts to reach a prompt resolution of th[e] Bankruptcy Case" [3-ApplchER-398–399 (¶5)], all of which would be equally true if any other five State Court Actions – or none at all – were released from the automatic stay. The RJN likewise supplied nothing specific to the Released State Court Actions, containing only the Stipulation and background information on the Bankruptcy Case and

Adversary Proceeding generally. *See* [3-ApplchER-401–403]. Not to mention, the Debtor failed to supply any information regarding the Released State Court Actions themselves beyond case number and abbreviated caption. [3-ApplchER-419–451.]

Few if any of these details were relevant to the Debtor's asserted "cause" for relief, and none supported it. In fact, the documents attached to the RJN demonstrated the ***opposite***: *viz.*, the Released State Court Actions did not satisfy the *Curtis* factors and would not promote mediation. For instance, the Gaspari declaration confirmed that all but two JCCP cases involving the Debtor had been stayed since the inception of the coordinated proceeding (*i.e.*, long before the Bankruptcy Case), and those two had already been released from the stay [4-ApplchER-595 (¶¶5–6); 5-ApplchER-826–834] – meaning that none of the Released State Court Actions were near trial [4-ApplchER-595 (¶7)]. *Cf. In re The Roman Catholic Bishop of San Diego*, Dkt. No. 851, at 4 (verdicts "months or years away"); *In re Curtis*, 40 B.R. at 800 (describing as a relevant factor whether "the parties are prepared for trial"). And the Stipulation itself suggests that the Released State Court Actions are not

representative of the remainder. *See infra* §II; *cf. In re Chevron U.S.A.*, 109 F.3d at 1020.

The District Court nonetheless endeavored to fill the evidentiary gap with the Gaspari and Weinstein declarations, which were filed in the Adversary Proceeding months before the Stipulation, stating those declarations "provided an ample evidentiary basis to find cause." [1-ApplchER-10–11.] That rationale fails for at least three reasons. First, the Debtor itself told the District Court that the statements in the RJN materials "were not offered for the truth of the matter asserted." [2-ApplchER-123–124.] Having offered those materials for a non-truth purpose, the Debtor cannot (nor could the District Court) rely on their truth to prove "cause." Second, the Stipulation disclaims any admission "as to the allegations in the Injunction Motion … or the merits of any of the issues raised therein." [1-ApplchER-23 (¶6).] Finally, the declarations addressed the asserted burdens of litigating all of the roughly forty State Court Actions at once; they said nothing about the five Released State Court Actions. *E.g.*, [4-ApplchER-687 (¶12)]. Evidence that litigating forty cases would be burdensome is not evidence that litigating the five Released State Court Actions is beneficial.

The upshot is a record that more likely than not disproved the Debtor's case – and in any event is utterly devoid of the facts necessary to make a *prima facie* showing. Under these circumstances, the Bankruptcy Court's decision to lift the automatic stay was both "illogical" and "without support in inferences that may be drawn from the facts in the record," *Hinkson*, 585 F.3d at 1263, and thus was an abuse of discretion.

This is true notwithstanding the District Court's contention that neither "truly representative" cases nor "individualized findings for each" were necessary. [1-ApplchER-11–12.] As a gating issue, that framing ignores the critical distinction between individualized ***findings*** and individualized ***evidence***. The latter is by necessity a prerequisite to any analysis or finding of "cause" under either rubric (facilitation of mediation or *Curtis* factors) because both rely on case-specific information. Put differently, it is impossible to determine whether, *e.g.*, "the debtor's insurance carrier has assumed full responsibility for defending the litigation" in a given case, *In re Curtis*, 40 B.R. at 800 (factor 5), or whether one case is representative of the others (relevant to mediation, *see supra*), or whether another case is trial-ready (relevant to

both, *see supra*) without evidence ***about each case***. Thus, irrespective of the level of detail required in a finding of "cause" – which the Bankruptcy Court did not make to begin with – the Bankruptcy Court abused its discretion by modifying the stay on a record empty of the information necessary to do so. *See Hinkson*, 585 F.3d at 1262.

By the same token, unrepresentative cases are more than merely "a worst-case scenario for litigation exposure" that "could reasonably be viewed as providing relevant information for settlement." [1-ApplchER-11.] For obvious reasons, settlement (the product of successful mediation) is possible only with the agreement of all parties. *Cf.* [5-ApplchER-728 (¶3)]. With rational actors, that occurs only when every party concludes that a consensual resolution is preferable to a litigated one – or, in economic terms, when the parties believe the benefits of settlement outweigh the risks and costs of trial. *See generally* Steven Shavell, *Foundations of Economic Analysis of Law* 401–02 (2004) [https://doi.org/10.2307/j.ctv1m0kjr4]. Logic thus dictates that, all things being equal, new information will not increase the probability of settlement unless it encourages a convergence of the parties' beliefs. *See id*. at 404 ("[T]he greater the amount by which the plaintiff's estimate of

the likelihood of winning exceeds the defendant's, the smaller the tendency toward settlement."); *id.* at 405 ("To the degree that the parties do come to similar beliefs, settlement becomes more likely.").

Skewed data that inflate expected judgments have the precise opposite effect. *See id.* ("If the size of the judgment rises, then the likelihood of trial rises, other things being constant."). That is because "the effect of a divergence in the assessments of the likelihood of winning is magnified if the judgment that would be awarded becomes larger."[11] *Id.* In other words, information that increases a plaintiff's monetary expectations ***inhibits*** settlement. *See generally id.*

This exposes the fatal flaw in the District Court's reasoning. Five "strongest cases" [1-ApplchER-11] cherry-picked by Abuse Claimants or the Committee will return outsize and unrepresentative verdicts, on the unlikely chance they return anything at all timely. That almost certainly will inflate the remaining plaintiffs' expectations and by extension make

[11] In more concrete terms: a 10% divergence in the parties' win/loss beliefs creates a relatively *de minimis* difference in expectations if the anticipated judgment is $100,000 ($100,000 X .10 = $10,000), but the difference is much more substantial when the anticipated judgment is $1,000,000 ($1,000,000 X .10 = $100,000). *See* Shavell, *supra*, at 405.

settlement less, not more, likely. As a result, the Bankruptcy Court approved relief that frustrates the purpose for which it was granted. That is the very definition of an abuse of discretion. *See Hinkson*, 585 F.3d at 1263.

2. <u>The Stipulation Is Not Fair and Equitable</u>

The Order fares no better under Rule 9019 and related law. Rule 9019, which governs settlements in bankruptcy, provides that a bankruptcy court "may approve a compromise or settlement" following "notice and a hearing." Fed. R. Bankr. P. 9019(a). This authority is contained in Rule 9019(a) alone; the Bankruptcy Code does not itself "confer on a [debtor] the power to compromise or settle controversies," so there is no statutory language to guide the inquiry. 10A Collier on Bankruptcy ¶ 9019.01 (Richard Levin & Henry J. Sommer eds., 16th ed. 2026).

Nevertheless, the legal standard for approval of a settlement or compromise is well settled. A court "must … find that the compromise is fair and equitable" – "a mere good faith negotiation of a settlement" is not enough – and "[i]n determining the fairness, reasonableness and

adequacy of a proposed settlement agreement, the court must consider" four factors:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Props.*, 784 F.2d at 1381 (citations omitted). The debtor, "as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise" satisfies these factors – *i.e.*, "is fair and equitable and should be approved." *Id.*; *see also id.* at 1383 ("An approval of a compromise, absent a sufficient factual foundation which establishes that it is fair and equitable, inherently constitutes an abuse of discretion.").

The approving court is in turn obligated to render an "informed, independent judgment" on the matter. *TMT Trailer*, 390 U.S. at 424 (citation omitted) (decided under the Bankruptcy Act); *In re Arden*, 176 F.3d 1226, 1230–31 (9th Cir. 1999) ("We cannot rubber stamp the compromise …"). To do so, the judge must first "apprise[] himself of all facts necessary for an intelligent and objective opinion of the probabilities

of ultimate success should the claim be litigated" and "form an educated estimate" of the "other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer*, 390 U.S. at 424; *accord In re A & C Props.*, 784 F.2d at 1382 (quoting *TMT Trailer*, 390 U.S. at 424–25).

Critical to that analysis is ascertaining "whether the proposed settlement would 'unduly prejudice' a non-settling creditor or other party." *In re MatlinPatterson Glob. Opportunities Partners II L.P.*, 644 B.R. 418, 426 (Bankr. S.D.N.Y. 2022) (citations omitted); *see also In re Miami Metals I, Inc.*, 603 B.R. 531, 535 (Bankr. S.D.N.Y. 2019) (stating that "the court cannot approve [a settlement] without considering the interests of" non-settling parties whose rights "are implicated" (citations omitted)). Put differently, a bankruptcy court "before endorsing a settlement … is obligated to make an examination of how the accord affects the rights of third parties," and cannot simply assess the fairness of the transaction vis-à-vis the debtor and its creditors. *In re Drexel Burnham Lambert Grp. Inc.*, 995 F.2d 1138, 1146 (2d Cir. 1993); *accord TMT Trailer*, 390 U.S. at 423–41, 454 (reversing and remanding order

that approved embedded compromise over objections from non-settling third-party SEC, among others).

Then, at the conclusion of this "comprehensive consideration of all relevant factors," the bankruptcy court should provide a decision with "well-reasoned conclusions" that offer insight into its fair and equitable determination. *See TMT Trailer*, 390 U.S. at 434. "[M]ere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law" does not suffice. *Id.*

Against this backdrop, a number of problems with the Order are immediately apparent. Most visibly, the Order lacks anything approaching "a comprehensive consideration of [the applicable settlement] factors" as applied to the Stipulation – not least because "there is no explanation" in the Order "of how the strengths and weaknesses of the [D]ebtor's causes of action" in the Adversary Proceeding "were evaluated or upon what grounds it was concluded that" the Stipulation "was 'fair and equitable.'" *Id.*

The entirety of the Bankruptcy Court's reasoning on the subject, the Docket Text Order, instead consists (in relevant part) of an observation "that not a single abuse claimant … objected" to the Motion,

followed by the conclusion that: "The [M]otion is well-taken, easily satisfies the A & C test by considering and weighing the factors, as the court does independently here, and represents a needed, good faith settlement of a bona-fide dispute." [1-ApplchER-52.] This is woefully inadequate. At the outset, the Supreme Court has specifically rejected the notion that creditor silence supports or establishes the propriety of a settlement. *TMT Trailer*, 390 U.S. at 435 ("The argument that the compromises were properly approved because no creditors objected to them seems doubly dubious."). More, the "bare statement of conclusion," *id*. at 435, that the Bankruptcy Court "consider[ed] and weigh[ed] the factors" [1-ApplchER-52] is precisely the type of "boiler-plate approval … unsupported by evaluation of the facts or analysis of the law" that *TMT Trailer* forbids. *TMT Trailer*, 390 U.S. at 434; *see id*. at 432 (setting forth the trial court's limited reasoning, including a statement "that the[] compromises are fair and equitable under the circumstances"). Both defects are reason enough to remand for further proceedings. *See id*. at 434–35.

But even aside from these facial flaws, the Order is error because the Bankruptcy Court did not engage in an appropriate "examination of

how the [Stipulation] affects the rights of third parties," like Appalachian. *In re Drexel Burnham*, 995 F.2d at 1146. In full, the Bankruptcy Court's analysis consists of an opinion that the insurers showed "no meaningful prejudice" followed by a finding that the Committee "did not unilaterally select the [Released State Court Actions]." [1-ApplchER-52]; *see also* [*id.* (stating that insurers could not "be surprised or harmed" by the demand-and-tender procedure)]. There are at least two problems with this approach.

***First***, the finding regarding the selection of the Released State Court Actions is clearly erroneous. *See infra* §II. The Bankruptcy Court thus abused its discretion to the extent that its "resolution of the [M]otion resulted from" that finding. *See Hinkson*, 585 F.3d at 1263.

***Second***, the Bankruptcy Court's "no meaningful prejudice" [1-ApplchER-52] conclusion cannot be squared with the terms and effects of the Stipulation itself. Relevant here, the Stipulation provides for two forms of relief. It first effectively extends to the Non-Debtor Affiliates the benefits of the automatic stay. [1-ApplchER-22 (¶2).] It then modifies the as-extended stay to authorize demand letters, along with the continued prosecution through final judgment of the Released State

Court Actions, with the following condition: "Entry of a judgment … in the Released State Court Actions shall not create a lien against any ***non-insurance*** asset of the Debtor or any Non-Debtor Affiliate" [*id*. (¶3.c) (emphasis added)], nor may any Abuse Claimant create or impose a lien, or "otherwise enforce any judgment[,] against any ***non-insurance*** asset(s) of the Debtor or any Non-Debtor Affiliate" [*id*. (¶3.d) (emphasis added)]. "[I]nsurance policies or the proceeds of such policies" of the Debtor and Non-Debtor Affiliates explicitly are excluded from the safe harbor, as are "the assets of any defendant that is not the Debtor or a Non-Debtor Affiliate." [*Id*. (¶3.c).]

The Stipulation thus immunizes the Debtor and Non-Debtor Affiliates from all monetary harm arising from any of the Released State Court Actions (or the demand letters), while simultaneously channeling to insurers like Appalachian all possible risk of loss.[12] *See generally* [1-ApplchER-22–23]. This is a change for the worse. Under ordinary circumstances, an insured has at least some vested interest in the

[12] It potentially goes further: it bars all Abuse Claimants from enforcing any judgment against the Debtor's and Non-Debtor Affiliates' non-insurance assets. [1-ApplchER-22 (¶3.d).]

outcome of litigation against it. It may face the prospect of blown coverage (for, *e.g.*, failing to cooperate in the defense), claims in excess of limits, or uninsured damages. Any or all of these incentivize the vigorous defense of claims.

That is no longer true under the Stipulation. By walling off all non-insurance assets of the Debtor and Non-Debtor Affiliates (while leaving insurance exposed), the Stipulation destroys any "incentive to contest liability or damages" – and, by extension, invites "potential … abuse and collusion." *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal.App.4th 998, 1023 (1992); *see id*. ("[W]hen a stipulated judgment or settlement under which the insured has no personal liability binds the insurer," the "insureds' best interests are served by agreeing to damages in any amount…."). That is "meaningful prejudice" [1-ApplchER-52] in any sense of the word.

Yet despite recognizing that the Stipulation "could change some incentives in the present moment" [1-ApplchER-13], the District Court brushed off the harm as merely a matter of sequencing. In the District Court's view, "Appellants face initial liability, followed by [the Debtor's] non-insurance assets through the plan confirmation process," and as such, "both insurance and non-insurance assets will eventually have to

satisfy claims." [*Id.*]; *see* [*id.* ("Absent this settlement, only the sequence of those assets satisfying claims would change.")]. This analysis fails for several reasons.

Most prominently, it does not account for the Non-Debtor Affiliates. Unlike the Debtor, the Non-Debtor Affiliates are not in bankruptcy and are not required to make available their assets for the satisfaction of creditor claims through the plan process. These entities thus receive the functional equivalent of a discharge (at least in respect of the Abuse Claims) without any of the obligations that come with it, *but cf. Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 221–23 (2024) (rejecting as "word games" the distinction between a release and a discharge for non-debtors), including, as particularly relevant here, the obligation to pay creditors. California Insurance Code §11580(b)(1), on which the District Court relied [1-ApplchER-13], does not change this: the statute ensures that an insured's bankruptcy does not release the insurer, but it says nothing (nor could it) about whether a bankruptcy court may shield a non-debtor insured's assets so that the insurer alone bears every dollar of the judgment.

Further, and more fundamentally, the law simply does not support the District Court's interpretation.[13] The *TMT Trailer* and *A & C Properties* analyses focus on the effects of a compromise or settlement at present – whether it ***is*** "fair and equitable" – not whether such an agreement ***would be*** "fair and equitable" by reason of hypothetical future actions. *In re A & C Props.*, 784 F.2d at 1383; *TMT Trailer*, 390 U.S. at 437–41. In that the District Court concentrated on the latter and not the former, its analysis is incorrect.

In sum, then, the Stipulation was not then and is not now "fair and equitable." It is a collusive bargain that directly and purposefully targets insurers like Appalachian, in derogation of blackletter law. For these reasons, and as set forth in greater detail above, the Bankruptcy Court in granting the Motion and approving the Stipulation abused its discretion. The Order should be remanded.

---

[13] It is also internally inconsistent. Despite dismissing the prejudicial effects of the Stipulation by pointing to the "plan confirmation process" [1-ApplchER-13], the District Court later rejected Appalachian's discrimination argument, in part, on the basis that the applicable statute "applies to plan confirmation, not modification of the automatic stay" [1-ApplchER-14].

## II. THE BANKRUPTCY COURT CLEARLY ERRED

In addition to the abuses of discretion detailed above, the Bankruptcy Court clearly erred by finding that the Committee "did not unilaterally select" the Released State Court Actions. [1-ApplchER-52]; *see Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1087 (9th Cir. 2011) (a finding of fact is clearly erroneous "if it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.").

As a threshold matter, no facts of record definitively established how or by whom the Released State Court Actions were selected.[14] The Summerhays Declaration lacks any discussion of the issue, and every document attached to the RJN – excepting only the Stipulation –

---

[14] The Debtor and Committee in reply briefs before the Bankruptcy Court each argued that "the Committee did not unilaterally select the Released State Court Actions." [3-ApplchER-221]; *see* [3-ApplchER-208 ("[T]he cases were jointly agreed to by the Debtor and the Committee. It was not a unilateral process.")]. This is, of course, meaningless. Under hornbook law, "arguments and statements of counsel" (written or oral) "are not evidence." *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (citing *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) ("Legal memoranda and oral argument, in the summary-judgment context, are not evidence …")); *see also, e.g.*, *Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003) (stating argument of counsel "does not constitute evidence"); *TMT Trailer*, 390 U.S. at 437 ("[T]he court needs facts, not allegations.").

predates the Stipulation (and thus does not and cannot provide any insight into its terms). *See generally* [3-ApplchER-397–399]; [3-ApplchER-401–403]. Nor is the Stipulation itself any more illuminating, stating only that "a list identifying" the Released State Court Actions is exhibited thereto. [1-ApplchER-22 (¶3).] As such, the Bankruptcy Court's finding could not be based on established fact but was by necessity the result of an inference.

The only possible relevant record evidence (the Stipulation), however, does not support – and in fact contradicts – that inference. As set forth above, the Stipulation fully insulates the Debtor and Non-Debtor Affiliates from any financial jeopardy relative to the Released State Court Actions. *See supra.* As a result, the Debtor's pockets (and those of the Non-Debtor Affiliates) are no lighter from runaway verdicts than from $2 ones; it simply does not matter, from a financial perspective, if the Released State Court Actions are weak, strong, or anything in between. The Debtor and Non-Debtor Affiliates thus lacked any incentive to insist on (or resist) the selection of any particular State Court Action, while the Committee – a fiduciary for the claimants – had the means, motive, and opportunity to do so.

Under these circumstances, unilateral selection of the Released State Court Actions by the Committee is the only reasonable inference supported by facts in the record. The Bankruptcy Court's finding otherwise was both illogical and unjustified and therefore was clearly erroneous. *See Red Lion Hotels Franchising*, 663 F.3d at 1087.

## III. THE RESULT BELOW CONTRAVENES PUBLIC POLICY

Finally, the Order must be reversed because it approves manifestly inappropriate conduct, in derogation of the principles and policy underlying the Bankruptcy Code. The Bankruptcy Code purposefully does not grant unfettered power to a debtor; it "does not permit anything and everything that might advance" a debtor's reorganization. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 386 (2019). Nor is it "focused on the unadulterated pursuit of the debtor's interest" to the exclusion of all others. *Bartenwerfer v. Buckley*, 598 U.S. 69, 81 (2023). Rather, it "like all statutes, balances multiple, often competing interests." *Id.*

Chief among these are the rights of creditors and other parties-in-interest who are funneled, often involuntarily, into a forum not of their choosing. *See In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir. 1999)

(noting "the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws ...." (quoting *In re Little Creek Dev. Co.*, 779 F.2d at 1072)). To protect the legitimate interests of such parties, the Bankruptcy Code and decisional caselaw place firm boundaries on most exercises of the bankruptcy power. *E.g.*, *Purdue Pharma*, 603 U.S. at 218 ("Congress could have said ... that 'everything not expressly prohibited is permitted.' But it didn't.").

This includes the automatic stay. Under blackletter law, "the purposes of the automatic stay [are] twofold." *Sternberg*, 595 F.3d at 947. It "enabl[es] the debtor to try to reorganize during a break from collection efforts," and "protect[s] creditors by preventing one creditor from pursuing its own remedies to the detriment of its co-creditors." *Id.* For these reasons, the automatic stay is often described as "one of the fundamental debtor protections." *In re Bialac*, 712 F.2d 426, 431 (9th Cir. 1983) (quotations omitted).

As each of these purposes reflects, the automatic stay ***is not a weapon***; it "is a shield, not a sword," *Sternberg*, 595 F.3d at 948. Indeed, this Court has expressly endorsed as "proper" and "rational" a

bankruptcy court's denial of stay relief when the movant "admitted to the bankruptcy judge that it was seeking relief from the stay to strengthen its position against [the debtor] and other creditors in negotiating a reorganization plan." *In re Conejo Enters., Inc.*, 96 F.3d at 353; *see also id*. ("The judge determined that this was highly inappropriate.").

Yet the Stipulation here is, in the words of the Committee, designed to "intensif[y] the negotiation environment" [2-ApplchER-151] through "litigation and settlement mechanisms" [2-ApplchER-142]. In fact, one such "mechanism" (demand-and-tender) explicitly is meant to put the insurers "at risk of state-law consequences" – euphemistically described by the Committee in briefing before the Bankruptcy Court as a "strong incentiv[e]" to "fulfill their policy obligations." [3-ApplchER-210.] That is not an appropriate use of the automatic stay and should not have been approved by the Bankruptcy Court. *See, e.g.*, *Sternberg*, 595 F.3d at 948; *In re Conejo Enters., Inc.*, 96 F.3d at 353; [3-ApplchER-386 (50:6–16) (Transcript of Decision, *In re The Roman Catholic Diocese of Syracuse, N.Y.*, No. 20-30663-WAK (Bankr. N.D.N.Y. Sep. 28, 2023) (denying stay relief to preserve §362(a)'s design to "keep a level playing field"))].

More, this abuse of the automatic stay implicates serious concerns under §1123(a)(4). That section in pertinent part states that a plan must "provide the same treatment for each claim or interest of a particular class," 11 U.S.C. §1123(a)(4), and is generally understood to embody "the principle that all similarly situated creditors in bankruptcy are entitled to equal treatment." *In re Energy Future Holdings Corp.*, 648 F. App'x 277, 283 (3d Cir. 2016). And while §1123(a)(4) by its terms applies to the plan confirmation context, "a bankruptcy court cannot disregard the central tenets of the bankruptcy system" simply because the offending act occurs prior to plan confirmation. *Id.*; *Jevic*, 580 U.S. at 468–69 (citing cases with "proposed transactions [outside the plan context] that lower courts have refused to allow on the ground that they circumvent the Code's procedural safeguards"). That is, however, exactly what occurred here. Despite the Bankruptcy Code's central policy of equal treatment for similarly situated creditors – which the automatic stay is itself designed to preserve, *see In re Conejo Enters., Inc.*, 96 F.3d at 352 – the Bankruptcy Court below approved a compromise that creates a preferred class of claimants: the plaintiffs in the five Released State Court Actions. These claimants alone will begin liquidating their Abuse

Claims, potentially to and through final judgment, while the Abuse Claims of their peers will remain unliquidated and frozen in place. The five Released State Court Action plaintiffs thus will obtain permanent and possibly enormous advantages over all other Abuse Claimants (*e.g.*, a litigation head start, if not liquidated claims with established amounts and validity, potential liens on insurance, negotiation leverage during the plan process) in clear violation of the Bankruptcy Code's equal treatment norms.[15]

Nor is the inequity cured by the District Court's observation that the policies lack aggregate limits. [1-ApplchER-14.] Not only was that contention disputed in the Adversary Proceeding and never before the Bankruptcy Court in the first place, but it also misses the point entirely.

---

[15] That the five plaintiffs "will still not be able to enforce any judgment obtained against … non-insurance assets" misses the point, as does the suggestion that the Bankruptcy Court "still retains the ability to balance the interests of those claimants with the others when considering a" reorganization plan. [1-ApplchER-14.] The fundamental problem with the Stipulation (from a discrimination perspective) is that it creates a preferred class of claimants that a plan very well may be required to treat differently. *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013) ("[C]ourts have interpreted the 'same treatment' requirement to mean that all claimants in a class have 'the same opportunity' for recovery." (quotations omitted)).

The advantage conferred on the five Released State Court Action plaintiffs is a liquidated judgment, a potential lien on insurance, first-in-time payment, and leverage that no stayed Abuse Claimant can obtain. And the absence of aggregate limits only sharpens the moral hazard described above: every inflated verdict falls on the insurers alone, while the insured's non-insurance assets are protected. Approving that arrangement without any evidentiary basis, for the avowed purpose of pressuring non-settling parties, while creating disparity that the Bankruptcy Code would not otherwise tolerate, is a departure from the balance the Bankruptcy Code strikes between a debtor's interest in reorganizing and the rights of those drawn involuntarily into its bankruptcy. Granting the Motion was an abuse of discretion.

## CONCLUSION

WHEREFORE, Appalachian respectfully requests entry of an order (a) (i) reversing the DC Order and remanding this cause to the Bankruptcy Court for further proceedings consistent with this Court's opinion or (ii) in the alternative, vacating the DC Order and remanding with instructions for the Bankruptcy Court to select, with Appalachian's

input, representative cases to be released from the automatic stay; and (b) granting such other and further relief as is right and just.

Respectfully submitted October 26, 2026.

**PARKER, HUDSON, RAINER & DOBBS LLP**

*s/ Harris B. Winsberg*
Harris B. Winsberg
Matthew G. Roberts
Brian C. Aton
303 Peachtree Street NE
Suite 3600
Atlanta, Georgia 30308
(404) 523-5300

*-and-*

Todd C. Jacobs
John E. Bucheit
171 N. Aberdeen Street
Suite 400
Chicago, Illinois 60607
(312) 447-3306

**ROBINS KAPLAN LLP**

Christina M. Lincoln
2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
(310) 552-0130

*-and-*

Melissa M. D'Alelio
Taylore E. Karpa Schollard
800 Boylston Street
Suite 2500
Boston, Massachusetts 02199
(617) 267-2300

*Counsel for Appalachian Insurance Company*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** No. 26-4686

The undersigned attorney or self-represented party states the following:

[x] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*Interstate Fire & Cas. Co. v. The Roman Catholic Bishop of Sacramento (In re The Roman Catholic Bishop of Sacramento)*, No. 26-2812 (9th Cir. docketed May 4, 2026), and *Certain Underwriters at Lloyd's v. The Roman Catholic Bishop of Sacramento (In re The Roman Catholic Bishop of Sacramento)*, No. 26-2815 (9th Cir. docketed May 4, 2026). In bankruptcy, The Roman Catholic Bishop of Sacramento ("RCBS") initiated an adversary proceeding against certain abuse claimants with claims against both the RCBS and an affiliate. Subsequently, the RCBS, the Official Committee of Unsecured Creditors and certain abuse claimants entered into a stipulation similar to the stipulation at issue in this case and filed a motion to approve the stipulation in the bankruptcy case. Over the objections of insurers, the bankruptcy court granted the motion and the district court affirmed. After the appeals to this Court were docketed, certain parties to the appeals reached settlements in principle, subject to a confirmed plan of reorganization and definitive settlement documents. *See* No. 26-2812, Dkt. No. 5.1. Presently, the appeals are administratively closed. Notwithstanding the administrative closures, the RCBS appeals raise closely related issues to the present case.

*Pacific Indem. Co. v. Roman Catholic Bishop of Oakland (In re Roman Catholic Bishop of Oakland Bankr. Automatic Stay Appeal)*,

Nos. 26-3082 (lead) & 26-3221 (9th Cir. lead case docketed May 14, 2026). In the bankruptcy case of The Roman Catholic Bishop of Oakland ("RCBO"), the Official Committee of Unsecured Creditors moved for relief from the automatic stay to permit six unspecified abuse claimants to pursue their claims in state court as bellwethers and requested that the state court (not the bankruptcy court) select the cases to be released from the automatic stay. Over objections from insurers and the RCBO, the bankruptcy court granted the motion, and the district court affirmed. The appellants' opening briefs have been filed, and answering briefs appear to be due October 28, 2026. *See* No. 26-3082, Dkt. No. 45. Though the relief approved by the bankruptcy court was not in the form of a stipulation, as was the case in this appeal, the RCBO appeal raises closely related issues to the present case – to wit, the required showing of "cause" under §362(d)(1).

Signature *s/ Harris B. Winsberg* Date 10/26/2026

**No. 26-4686**

# United States Court of Appeals for the Ninth Circuit

APPALACHIAN INSURANCE COMPANY,

*Appellant*,

v.

THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRANCISCO, *et al.*,

*Appellees.*

Appeal from the United States District Court
for the Northern District of California (No. 3:25-cv-08563-RFL (lead))

## ADDENDUM TO APPELLANT APPALACHIAN INSURANCE COMPANY'S OPENING BRIEF

Harris B. Winsberg
Matthew G. Roberts
Brian C. Aton
**PARKER, HUDSON, RAINER & DOBBS LLP**
303 Peachtree St. NE
Suite 3600
Atlanta, Georgia 30308
(404) 523-5300

Todd C. Jacobs
John E. Bucheit
**PARKER, HUDSON, RAINER & DOBBS LLP**
171 N. Aberdeen Street
Suite 400
Chicago, Illinois 60607
(312) 447-3306

Christina M. Lincoln
**ROBINS KAPLAN LLP**
2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
(310) 552-0130

Melissa M. D'Alelio
Taylore E. Karpa Schollard
**ROBINS KAPLAN LLP**
800 Boylston Street
Suite 2500
Boston, Massachusetts 02199
(617) 267-2300

*Counsel for Appalachian Insurance Company*

# ADDENDUM TABLE OF CONTENTS

**Page**

**11 U.S.C. § 362 .......................................................................... 1**
**11 U.S.C. § 362(d) ................................................................... 13**
**Fed. R. Bankr. P. 4001 ............................................................ 23**
**Fed. R. Bankr. P. 9019 ............................................................ 31**

United States Code Annotated
Title 11. Bankruptcy (Refs & Annos)
Chapter 3. Case Administration (Refs & Annos)
Subchapter IV. Administrative Powers

11 U.S.C.A. § 362

# § 362. Automatic stay

Effective: October 30, 2020

Currentness

**(a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

**(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

**(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

**(3)** any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

**(4)** any act to create, perfect, or enforce any lien against property of the estate;

**(5)** any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

**(7)** the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

**(8)** the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

**(b)** The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay--

**(1)** under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

**(2)** under subsection (a)--

**(A)** of the commencement or continuation of a civil action or proceeding--

**(i)** for the establishment of paternity;

**(ii)** for the establishment or modification of an order for domestic support obligations;

**(iii)** concerning child custody or visitation;

**(iv)** for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or

**(v)** regarding domestic violence;

**(B)** of the collection of a domestic support obligation from property that is not property of the estate;

**(C)** with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;

**(D)** of the withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act;

**(E)** of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;

**(F)** of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law; or

**(G)** of the enforcement of a medical obligation, as specified under title IV of the Social Security Act;

**(3)** under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

**(4)** under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the

governmental unit to enforce such governmental unit's or organization's police or regulatory power;

**[(5) Repealed.** Pub.L. 105-277, Div. I, Title VI, § 603(1), Oct. 21, 1998, 112 Stat. 2681-886]

**(6)** under subsection (a) of this section, of the exercise by a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency of any contractual right (as defined in section 555 or 556) under any security agreement or arrangement or other credit enhancement forming a part of or related to any commodity contract, forward contract or securities contract, or of any contractual right (as defined in section 555 or 556) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such contracts, including any master agreement for such contracts;

**(7)** under subsection (a) of this section, of the exercise by a repo participant or financial participant of any contractual right (as defined in section 559) under any security agreement or arrangement or other credit enhancement forming a part of or related to any repurchase agreement, or of any contractual right (as defined in section 559) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

**(8)** under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units;

**(9)** under subsection (a), of--

**(A)** an audit by a governmental unit to determine tax liability;

**(B)** the issuance to the debtor by a governmental unit of a notice of tax deficiency;

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(C)** a demand for tax returns; or

**(D)** the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

**(10)** under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property;

**(11)** under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument;

**(12)** under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Transportation under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage, or a security interest in or relating to a vessel or vessel under construction, held by the Secretary of Transportation under chapter 537 of title 46 or section 109(h) of title 49, or under applicable State law;

**(13)** under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Commerce under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage in a vessel or a mortgage, deed of trust, or other security interest in a fishing facility held by the Secretary of Commerce under chapter 537 of title 46;

**(14)** under subsection (a) of this section, of any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution;

**(15)** under subsection (a) of this section, of any action by a State licensing body regarding the licensure of the debtor as an educational institution;

**(16)** under subsection (a) of this section, of any action by a guaranty agency, as defined in section 435(j) of the Higher Education Act of 1965 or the Secretary of Education regarding the eligibility of the debtor to participate in programs authorized under such Act;

**(17)** under subsection (a) of this section, of the exercise by a swap participant or financial participant of any contractual right (as defined in section 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any swap agreement, or of any contractual right (as defined in section 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

**(18)** under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition;

**(19)** under subsection (a), of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer--

**(A)** to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986; or

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(B)** a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;

but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title;

**(20)** under subsection (a), of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing;

**(21)** under subsection (a), of any act to enforce any lien against or security interest in real property--

**(A)** if the debtor is ineligible under section 109(g) to be a debtor in a case under this title; or

**(B)** if the case under this title was filed in violation of a bankruptcy court order in a prior case under this title prohibiting the debtor from being a debtor in another case under this title;

**(22)** subject to subsection (l), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor;

**(23)** subject to subsection (m), under subsection (a)(3), of an eviction action that seeks possession of the residential property in which the debtor resides as a tenant under a lease or rental agreement based on endangerment of such property or the illegal use of controlled substances on such property, but only if the lessor files with the court, and serves upon the debtor, a certification under penalty of perjury that such an eviction action has been filed, or that the debtor, during the 30-day period preceding the date of

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

the filing of the certification, has endangered property or illegally used or allowed to be used a controlled substance on the property;

**(24)** under subsection (a), of any transfer that is not avoidable under section 544 and that is not avoidable under section 549;

**(25)** under subsection (a), of--

**(A)** the commencement or continuation of an investigation or action by a securities self regulatory organization to enforce such organization's regulatory power;

**(B)** the enforcement of an order or decision, other than for monetary sanctions, obtained in an action by such securities self regulatory organization to enforce such organization's regulatory power; or

**(C)** any act taken by such securities self regulatory organization to delist, delete, or refuse to permit quotation of any stock that does not meet applicable regulatory requirements;

**(26)** under subsection (a), of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief, except that in any case in which the setoff of an income tax refund is not permitted under applicable nonbankruptcy law because of a pending action to determine the amount or legality of a tax liability, the governmental unit may hold the refund pending the resolution of the action, unless the court, on the motion of the trustee and after notice and a hearing, grants the taxing authority adequate protection (within the meaning of section 361) for the secured claim of such authority in the setoff under section 506(a);

**(27)** under subsection (a) of this section, of the exercise by a master netting agreement participant of any contractual right (as defined in section 555, 556, 559, or 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any master netting agreement, or of any contractual right (as defined in section 555, 556, 559, or 560) to offset or net out any termination value, payment amount, or

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

other transfer obligation arising under or in connection with 1 or more such master netting agreements to the extent that such participant is eligible to exercise such rights under paragraph (6), (7), or (17) for each individual contract covered by the master netting agreement in issue;

**(28)** under subsection (a), of the exclusion by the Secretary of Health and Human Services of the debtor from participation in the medicare program or any other Federal health care program (as defined in section 1128B(f) of the Social Security Act pursuant to title XI or XVIII of such Act); and

**(29)** under subsection (a)(1) of this section, of any action by--

**(A)** an amateur sports organization, as defined in section 220501(b) of title 36, to replace a national governing body, as defined in that section, under section 220528 of that title; or

**(B)** the corporation, as defined in section 220501(b) of title 36, to revoke the certification of a national governing body, as defined in that section, under section 220521 of that title.

The provisions of paragraphs (12) and (13) of this subsection shall apply with respect to any such petition filed on or before December 31, 1989.

**(c)** Except as provided in subsections (d), (e), (f), and (h) of this section--

**(1)** the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

**(2)** the stay of any other act under subsection (a) of this section continues until the earliest of--

**(A)** the time the case is closed;

**(B)** the time the case is dismissed; or

**(C)** if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied;

**(3)** if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--

**(A)** the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

**(B)** on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and

**(C)** for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)--

**(i)** as to all creditors, if--

**(I)** more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

**(II)** a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to--

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(aa)** file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

**(bb)** provide adequate protection as ordered by the court; or

**(cc)** perform the terms of a plan confirmed by the court; or

**(III)** there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded--

**(aa)** if a case under chapter 7, with a discharge; or

**(bb)** if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

**(ii)** as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor; and

**(4)(A)(i)** if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and

**(ii)** on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;

**(B)** if, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed;

**(C)** a stay imposed under subparagraph (B) shall be effective on the date of the entry of the order allowing the stay to go into effect; and

**(D)** for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)--

**(i)** as to all creditors if--

**(I)** 2 or more previous cases under this title in which the individual was a debtor were pending within the 1-year period;

**(II)** a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court, or failed to perform the terms of a plan confirmed by the court; or

**(III)** there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title, or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; or

**(ii)** as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor.

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

**(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;

**(2)** with respect to a stay of an act against property under subsection (a) of this section, if--

**(A)** the debtor does not have an equity in such property; and

**(B)** such property is not necessary to an effective reorganization;

**(3)** with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--

**(A)** the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

**(B)** the debtor has commenced monthly payments that--

**(i)** may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(ii)** are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or

**(4)** with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--

**(A)** transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

**(B)** multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

**(e)(1)** Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(2)** Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which the debtor is an individual, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless--

**(A)** a final decision is rendered by the court during the 60-day period beginning on the date of the request; or

**(B)** such 60-day period is extended--

**(i)** by agreement of all parties in interest; or

**(ii)** by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.

**(f)** Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

**(g)** In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--

**(1)** the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

**(2)** the party opposing such relief has the burden of proof on all other issues.

**(h)(1)** In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)--

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(A)** to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

**(B)** to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

**(2)** Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

**(i)** If a case commenced under chapter 7, 11, or 13 is dismissed due to the creation of a debt repayment plan, for purposes of subsection (c)(3), any subsequent case commenced by the debtor under any such chapter shall not be presumed to be filed not in good faith.

**(j)** On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated.

**(k)(1)** Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

**(2)** If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

**(l)(1)** Except as otherwise provided in this subsection, subsection (b)(22) shall apply on the date that is 30 days after the date on which the bankruptcy petition is filed, if the debtor files with the petition and serves upon the lessor a certification under penalty of perjury that--

**(A)** under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and

**(B)** the debtor (or an adult dependent of the debtor) has deposited with the clerk of the court, any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

**(2)** If, within the 30-day period after the filing of the bankruptcy petition, the debtor (or an adult dependent of the debtor) complies with paragraph (1) and files with the court and serves upon the lessor a further certification under penalty of perjury that the debtor (or an adult dependent of the debtor) has cured, under nonbankruptcy law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought by the lessor, subsection (b)(22) shall not apply, unless ordered to apply by the court under paragraph (3).

**(3)(A)** If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true.

**(B)** If the court upholds the objection of the lessor filed under subparagraph (A)--

**(i)** subsection (b)(22) shall apply immediately and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(ii)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's objection.

**(4)** If a debtor, in accordance with paragraph (5), indicates on the petition that there was a judgment for possession of the residential rental property in which the debtor resides and does not file a certification under paragraph (1) or (2)--

**(A)** subsection (b)(22) shall apply immediately upon failure to file such certification, and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(B)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating the absence of a filed certification and the applicability of the exception to the stay under subsection (b)(22).

**(5)(A)** Where a judgment for possession of residential property in which the debtor resides as a tenant under a lease or rental agreement has been obtained by the lessor, the debtor shall so indicate on the bankruptcy petition and shall provide the name and address of the lessor that obtained that pre-petition judgment on the petition and on any certification filed under this subsection.

**(B)** The form of certification filed with the petition, as specified in this subsection, shall provide for the debtor to certify, and the debtor shall certify--

**(i)** whether a judgment for possession of residential rental housing in which the debtor resides has been obtained against the debtor before the date of the filing of the petition; and

**(ii)** whether the debtor is claiming under paragraph (1) that under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment of possession was entered, and has made the appropriate deposit with the court.

**(C)** The standard forms (electronic and otherwise) used in a bankruptcy proceeding shall be amended to reflect the requirements of this subsection.

**(D)** The clerk of the court shall arrange for the prompt transmittal of the rent deposited in accordance with paragraph (1)(B) to the lessor.

**(m)(1)** Except as otherwise provided in this subsection, subsection (b)(23) shall apply on the date that is 15 days after the date on which the lessor files and serves a certification described in subsection (b)(23).

**(2)(A)** If the debtor files with the court an objection to the truth or legal sufficiency of the certification described in subsection (b)(23) and serves such objection upon the lessor, subsection (b)(23) shall not apply, unless ordered to apply by the court under this subsection.

**(B)** If the debtor files and serves the objection under subparagraph (A), the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the situation giving rise to the lessor's certification under paragraph (1) existed or has been remedied.

**(C)** If the debtor can demonstrate to the satisfaction of the court that the situation giving rise to the lessor's certification under paragraph (1) did not exist or has been remedied, the stay provided under subsection (a)(3) shall remain in effect until the termination of the stay under this section.

**(D)** If the debtor cannot demonstrate to the satisfaction of the court that the situation giving rise to the lessor's certification under paragraph (1) did not exist or has been remedied--

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(i)** relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to proceed with the eviction; and

**(ii)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's certification.

**(3)** If the debtor fails to file, within 15 days, an objection under paragraph (2)(A)--

**(A)** subsection (b)(23) shall apply immediately upon such failure and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(B)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating such failure.

**(n)(1)** Except as provided in paragraph (2), subsection (a) does not apply in a case in which the debtor--

**(A)** is a debtor in a small business case pending at the time the petition is filed;

**(B)** was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief entered with respect to the petition;

**(C)** was a debtor in a small business case in which a plan was confirmed in the 2-year period ending on the date of the order for relief entered with respect to the petition; or

**(D)** is an entity that has acquired substantially all of the assets or business of a small business debtor described in subparagraph (A), (B), or (C), unless such entity establishes by a preponderance of the evidence that such entity acquired substantially all of the assets or business of such small business debtor in good faith and not for the purpose of evading this paragraph.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(2)** Paragraph (1) does not apply--

**(A)** to an involuntary case involving no collusion by the debtor with creditors; or

**(B)** to the filing of a petition if--

**(i)** the debtor proves by a preponderance of the evidence that the filing of the petition resulted from circumstances beyond the control of the debtor not foreseeable at the time the case then pending was filed; and

**(ii)** it is more likely than not that the court will confirm a feasible plan, but not a liquidating plan, within a reasonable period of time.

**(o)** The exercise of rights not subject to the stay arising under subsection (a) pursuant to paragraph (6), (7), (17), or (27) of subsection (b) shall not be stayed by any order of a court or administrative agency in any proceeding under this title.

CREDIT(S)

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2570; Pub.L. 97-222, § 3, July 27, 1982, 96 Stat. 235; Pub.L. 98-353, Title III, §§ 304, 363(b), 392, 441, July 10, 1984, 98 Stat. 352, 363, 365, 371; Pub.L. 99-509, Title V, § 5001(a), Oct. 21, 1986, 100 Stat. 1911; Pub.L. 99-554, Title II, §§ 257(j), 283(d), Oct. 27, 1986, 100 Stat. 3115, 3116; Pub.L. 101-311, Title I, § 102, Title II, § 202, June 25, 1990, 104 Stat. 267, 269; Pub.L. 101-508, Title III, § 3007(a)(1), Nov. 5, 1990, 104 Stat. 1388-28; Pub.L. 103-394, Title I, §§ 101, 116, Title II, §§ 204(a), 218(b), Title III, § 304(b), Title IV, § 401, Title V, § 501(b)(2), (d)(7), Oct. 22, 1994, 108 Stat. 4107, 4119, 4122, 4128, 4132, 4141, 4142, 4144; Pub.L. 105-277, Div. I, Title VI, § 603, Oct. 21, 1998, 112 Stat. 2681-886; Pub.L. 109-8, Title I, § 106(f), Title II, §§ 214, 224(b), Title III, §§ 302, 303, 305(1), 311, 320, Title IV, §§ 401(b), 441, 444, Title VII, §§ 709, 718, Title IX, § 907(d), (o)(1), (2), Title XI, § 1106, Title XII, § 1225, Apr. 20, 2005, 119 Stat. 41, 54, 64, 75, 77, 79, 84, 94, 104, 114, 117, 127, 131, 176, 181, 182, 192, 199; Pub.L. 109-304, § 17(b)(1), Oct. 6, 2006, 120 Stat. 1706; Pub.L. 109-390, § 5(a)(2), Dec. 12, 2006, 120 Stat. 2696; Pub.L. 111-327, § 2(a)(12), Dec. 22, 2010, 124 Stat. 3558; Pub.L. 116-189, § 9, Oct. 30, 2020, 134 Stat. 970.)

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.

11 U.S.C.A. § 362, 11 USCA § 362
Current through P.L. 119-121. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Federal Rules of Bankruptcy Procedure (Refs & Annos)
Part IV. The Debtor's Duties and Benefits

Federal Rules of Bankruptcy Procedure, Rule 4001

# Rule 4001. Relief from the Automatic Stay; Prohibiting or Conditioning the Use, Sale, or Lease of Property; Using Cash Collateral; Obtaining Credit; Various Agreements

Effective: December 1, 2024
Currentness

**(a) Relief from the Automatic Stay; Prohibiting or Conditioning the Use, Sale, or Lease of Property.**

(1) ***Motion.*** A motion under § 362(d) for relief from the automatic stay--or a motion under § 363(e) to prohibit or condition the use, sale, or lease of property--must comply with Rule 9014. The motion must be served on:

(A) the following, as applicable:

• a committee elected under § 705 or appointed under § 1102;

• the committee's authorized agent; or

• the creditors included on the list filed under Rule 1007(d) if the case is a Chapter 9 or Chapter 11 case and no committee of unsecured creditors has been appointed under § 1102; and

(B) any other entity the court designates.

(2) ***Relief Without Notice.*** Relief from a stay under § 362(a)--or a request under § 363(e) to prohibit or condition the use, sale, or lease of property--may be granted without prior notice only if:

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

(A) specific facts--shown by either an affidavit or a verified motion--clearly demonstrate that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party or its attorney can be heard in opposition; and

(B) the movant's attorney certifies to the court in writing what efforts, if any, have been made to give notice and why it should not be required.

(3) ***Notice of Relief; Motion for Reinstatement or Reconsideration.***

(A) *Notice of Relief.* A party who obtains relief under (2) and under § 362(f) or § 363(e) must:

(i) immediately give oral notice both to the debtor and to the trustee or the debtor in possession; and

(ii) promptly send them a copy of the order granting relief.

(B) *Motion for Reinstatement or Reconsideration.* On 2 days' notice to the party who obtained relief under (2)--or on shorter notice as the court may order--the adverse party may move to reinstate the stay or reconsider the order prohibiting or conditioning the use, sale, or lease of property. The court must proceed expeditiously to hear and decide the motion.

(4) ***Stay of an Order Granting Relief from the Automatic Stay.*** Unless the court orders otherwise, an order granting a motion for relief from the automatic stay under (1) is stayed for 14 days after it is entered.

**(b) Using Cash Collateral.**

(1) ***Motion; Content; Service.***

(A) *Motion.* A motion for authorization to use cash collateral must comply with Rule 9014 and must be accompanied by a proposed form of order.

(B) *Content.* The motion must consist of--or if the motion exceeds five pages, begin with--a concise statement of the relief requested, no longer than five pages. The statement must list or summarize all material provisions (citing their locations in the relevant documents), including:

• the name of each entity with an interest in the cash collateral;

• how it will be used;

• the material terms of its use, including duration; and

• all liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral--or if no such protection is proposed, an explanation of how each entity's interest is adequately protected.

(C) *Service.* The motion must be served on:

• each entity with an interest in the cash collateral;

• all those who must be served under (a)(1)(A); and

• any other entity the court designates.

(2) ***Hearings; Notice.***

(A) *Preliminary and Final Hearings.* The court may begin a final hearing on the motion no earlier than 14 days after it has been served. If the motion so requests, the court may conduct a preliminary hearing before that 14-day period ends. After a preliminary hearing, the court may authorize using only the cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

(B) *Notice.* Notice of a hearing must be given to the parties who must be served with the motion under (1)(C) and to any other entity the court designates.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(c) Obtaining Credit.**

(1) ***Motion; Content; Service.***

(A) *Motion.* A motion for authorization to obtain credit must comply with Rule 9014 and must be accompanied by a copy of the credit agreement and a proposed form of order.

(B) *Content.* The motion must consist of--or if the motion exceeds five pages, begin with--a concise statement of the relief requested, no longer than five pages. The statement must list or summarize all material provisions of the credit agreement and form of order (citing their locations in the relevant documents), including interest rates, maturity dates, default provisions, liens, and borrowing limits and conditions. If the credit agreement or form of order includes any of the provisions listed below in (i)-(xi), the concise statement must also list or summarize each one, describe its nature and extent, cite its location in the proposed agreement and form of order, and identify any that would remain effective if interim approval were to be granted but final relief denied under (2). The provisions are:

(i) a grant of priority or a lien on property of the estate under § 364(c) or (d);

(ii) the providing of adequate protection or priority for a claim that arose before the case commenced--including a lien on property of the estate, or its use, or of credit obtained under § 364 to make cash payments on the claim;

(iii) a determination of the validity, enforceability, priority, or amount of a claim that arose before the case commenced, or of any lien securing the claim;

(iv) a waiver or modification of Code provisions or applicable rules regarding the automatic stay;

(v) a waiver or modification of an entity's right to file a plan, seek to extend the time in which the debtor has the exclusive right to file a plan, request the use of

cash collateral under § 363(c), or request authorization to obtain credit under § 364;

(vi) the establishment of deadlines for filing a plan of reorganization, approving a disclosure statement, holding a hearing on confirmation, or entering a confirmation order;

(vii) a waiver or modification of applicable nonbankruptcy law regarding perfecting or enforcing a lien on property of the estate;

(viii) a release, waiver, or limitation on a claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action;

(ix) the indemnification of any entity;

(x) a release, waiver, or limitation of any right under § 506(c); or

(xi) the granting of a lien on a claim or cause of action arising under § 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a).

(C) *Service.* The motion must be served on all those who must be served under (a)(1)(A) and any other entity the court designates.

(2) ***Hearings; Notice.***

(A) *Preliminary and Final Hearings.* The court may begin a final hearing on the motion no earlier than 14 days after it has been served. If the motion so requests, the court may conduct a preliminary hearing before that 14-day period ends. After a preliminary hearing, the court may authorize obtaining credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

(B) *Notice.* Notice of a hearing must be given to the parties who must be served with the motion under (1)(C) and to any other entity the court designates.

(3) ***Inapplicability in a Chapter 13 Case.*** This subdivision (c) does not apply in a Chapter 13 case.

**(d) Various Agreements: Relief from the Automatic Stay; Prohibiting or Conditioning the Use, Sale, or Lease of Property; Providing Adequate Protection; Using Cash Collateral; or Obtaining Credit.**

(1) ***Motion; Content; Service.***

(A) *Motion.* A motion to approve any of the following must be accompanied by a copy of the agreement and a proposed form of order:

(i) an agreement to provide adequate protection;

(ii) an agreement to prohibit or condition the use, sale, or lease of property;

(iii) an agreement to modify or terminate the stay provided for in § 362;

(iv) an agreement to use cash collateral; or

(v) an agreement between the debtor and an entity that has a lien or interest in property of the estate under which the entity consents to creating a lien that is senior or equal to the entity's lien or interest.

(B) *Content.* The motion must consist of--or if the motion exceeds five pages, begin with--a concise statement of the relief requested, no longer than five pages. The statement must:

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

(i) list or summarize all the agreement's material provisions (citing their locations in the relevant documents); and

(ii) briefly list or summarize, cite the location of, and describe the nature and extent of each provision in the proposed form of order, agreement, or other document of the type listed in (c)(1)(B).

(C) *Service.* The motion must be served on all those who must be served under (a)(1)(A) and any other entity the court designates.

(2) ***Objection.*** Notice of the motion must be mailed to the parties on whom service of the motion is required and any other entity the court designates. The notice must include the time within which objections may be filed and served on the debtor in possession or trustee. Unless the court sets a different time, any objections must be filed within 14 days after the notice is mailed.

(3) ***Disposition Without a Hearing.*** If no objection is filed, the court may enter an order approving or disapproving the agreement without holding a hearing.

(4) ***Hearing.*** If an objection is filed or if the court decides that a hearing is appropriate, the court must hold one after giving at least 7 days' notice to:

• the objector;

• the movant;

• the parties who must be served with the motion under (1)(C); and

• any other entity the court designates.

(5) ***Agreement to Settle a Motion.*** The court may decide that a motion made under (a), (b), or (c) was sufficient to give reasonable notice of the agreement's material provisions and an opportunity for a hearing. If so, the court may order that the procedures prescribed in (1)-(4) do not apply and may approve the agreement without further notice.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

CREDIT(S)

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 26, 1999, eff. Dec. 1, 1999; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 28, 2010, eff. Dec. 1, 2010; Apr. 25, 2019, eff. Dec. 1, 2019; Apr. 2, 2024, eff. Dec. 1, 2024.)

Fed.Rules Bankr.Proc. Rule 4001, 11 U.S.C.A., FRBP Rule 4001
Including Amendments Received Through 10-1-2026

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Federal Rules of Bankruptcy Procedure (Refs & Annos)
Part IX. General Provisions

Federal Rules of Bankruptcy Procedure, Rule 9019

# Rule 9019. Compromise or Settlement; Arbitration

Effective: December 1, 2024

Currentness

**(a) Approving a Compromise or Settlement.** On the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement. Notice must be given to:

- all creditors;
- the United States trustee;
- the debtor;
- all indenture trustees as provided in Rule 2002; and
- any other entity the court designates.

**(b) Compromising or Settling Controversies in Classes.** After a hearing on such notice as the court may order, the court may:

(1) designate a class or classes of controversies; and

(2) authorize the trustee to compromise or settle controversies within the class or classes without further hearing or notice.

**(c) Arbitration of Controversies Affecting an Estate.** If the parties so stipulate, the court may authorize a controversy affecting an estate to be submitted to final and binding arbitration.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

CREDIT(S)

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991; Apr. 22, 1993, eff. Aug. 1, 1993; Apr. 2, 2024, eff. Dec. 1, 2024.)

Fed.Rules Bankr.Proc. Rule 9019, 11 U.S.C.A., FRBP Rule 9019
Including Amendments Received Through 10-1-2026

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** No. 26-4686

I am an attorney of record for Appalachian Insurance Company.

**This brief contains *13,928* words,** excluding the items exempted by Fed. R. App. P. 32(f), and no words are contained in any visual images. The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Harris B. Winsberg* Date 10/26/2026